Present:  Carrico, C.J., Compton, Lacy, Hassell, Keenan, and
   Kinser, JJ., and Whiting, Senior Justice

WARD'S EQUIPMENT,
INC., ET AL.
                              OPINION BY JUSTICE A. CHRISTIAN COMPTON
v.  Record No. 962544                October 31, 1997

NEW HOLLAND NORTH AMERICA, INC.

                FROM THE CIRCUIT COURT OF HALIFAX COUNTY
                     Charles L. McCormick, III, Judge


     In this controversy arising from a written contract between a manufacturer and a dealer in farm equipment, the case turns upon whether a party suing for damages may allege facts that essentially reform the contract and thereby withstand demurrer.

     In June 1995, appellants Ward's Equipment, Inc., Carl Ward, and Anne Ward (collectively, the dealer) sued appellee New Holland North America, Inc., successor to Ford New Holland, Inc. (the manufacturer or the company).  The dealer is a Virginia corporation with its principal place of business in South Boston.  The manufacturer is a Delaware corporation with its principal place of business in New Holland, Pennsylvania.

     In a "bill of complaint" filed on the chancery side of the court below, the dealer sought compensatory and punitive damages for alleged breaches of contract and alleged tortious activity, and asked for a trial by jury.  Attached as the only exhibit to the dealer's pleading is a letter dated October 3, 1994 from the manufacturer to the dealer discussing the parties' obligations under a Dealer Agreement.  The dealer did not incorporate the terms of the Dealer Agreement in its "bill of complaint."

     Responding, the manufacturer filed a demurrer and a motion

craving oyer. Among the grounds of the demurrer, the manufacturer asserted the trial court "lacks equity jurisdiction in that Plaintiffs have a complete and adequate remedy at law." The trial court never was asked to rule on this ground.

In the motion craving oyer, the manufacturer asserted that the dealer's complaint "identifies and characterizes, but fails to include, the written Dealer Agreement" between the parties dated August 14, 1987. The motion further stated: "It is necessary and proper for the Dealer Agreement and Schedule C thereto to be produced, oyer taken of it and that it becomes per se a matter of record for the consideration of this Court on New Holland's demurrer, and for all other purposes as if copied at large in Plaintiffs' Bill of Complaint." Concluding, the manufacturer asked the court to order a complete copy of the Dealer Agreement filed, to be "deemed an exhibit to Plaintiffs' Bill of Complaint." The motion was unopposed and was granted during a July 1996 hearing on the demurrer.

Following oral argument, the trial court sustained the demurrer and denied the dealer's motion for leave to file an amended complaint. We awarded the dealer an appeal from the trial court's September 1996 final order dismissing the action with prejudice.

Settled criteria governing a trial court's consideration of a demurrer should be reviewed. A demurrer admits the truth of all properly pleaded material facts. "All reasonable factual

inferences fairly and justly drawn from the facts alleged must be considered in aid of the pleading.  However, a demurrer does not admit the correctness of the pleader's conclusions of law."  Fox v. Custis, 236 Va. 69, 71, 372 S.E.2d 373, 374 (1988).

When a demurrant's motion craving oyer has been granted, the court in ruling on the demurrer may properly consider the facts alleged as amplified by any written agreement added to the record on the motion.  Hechler Chevrolet, Inc. v. General Motors Corp., 230 Va. 396, 398, 337 S.E.2d 744, 746 (1985).  Furthermore, and significant in this appeal, a court considering a demurrer may ignore a party's factual allegations contradicted by the terms of authentic, unambiguous documents that properly are a part of the pleadings.  See Fun v. Virginia Military Inst., 245 Va. 249, 253, 427 S.E.2d 181, 183 (1993).

No useful purpose will be served by summarizing in detail the dealer's 105-paragraph, 29-page complaint.  It is sufficient to observe that the dealer mounts a broadside attack on the manufacturer as the result of a business decision made by the manufacturer and expressed in the October 3 letter, a so-called "attrition letter."

In that letter, the dealer was notified that the manufacturer's "current market representation plan contemplates no dealer at your Dealer Location.  While we will continue to do business as normal with you under the terms of the Dealer Agreement, we will not consent to the sale or assignment of your

Dealer Agreement. . . ."

The dealer alleged that, at the time of this notice, it was negotiating a purchase agreement with a Ward family member, and that the notice severely restricted or eliminated the dealer's ability to consummate the contemplated transaction.  The dealer also alleged that shortly after sending the attrition letter, the manufacturer entered into an agreement with one of the dealer's competitors, located 15 miles from the dealer, to begin selling equipment previously available in its trade area only at the dealer's location.

Thus, arising from this climate of keen business competition, the dealer sought damages in a 12-count complaint. Many of the counts have been abandoned; those still viable are labelled "Breach of Contract," "De Facto Termination," "Fraud and Misrepresentation," "Estoppel," "Violation of Michigan Statutes," and "Violation of Virginia Statutes."

On appeal, the dealer contends the trial court erred in sustaining the demurrer "by considering questions of fact not in the record."  There is no merit to this contention.

The dealer points to a comment made by the trial judge from the bench during the course of sustaining the demurrer.  The court said the complaint failed to allege the manufacturer had engaged in any conduct that was not "authorized" or "anticipated" under the terms of the unambiguous August 1987 contract. This observation did not amount to a consideration of facts not of

record.  Rather, the ruling demonstrates that the trial court followed the foregoing criteria, which apply when a contract is part of the pleadings.  The court merely was describing a situation in which the dealer has ignored the contract's language in asserting claims that the contract refutes.

Next, the dealer argues the trial court erred by ignoring facts it alleged in support of its assertion that the manufacturer breached the contract.  The dealer asserted the contract breach occurred when the manufacturer "terminated" the dealership without cause, unreasonably withheld consent to the dealer's sale or assignment of the dealership, failed to deliver equipment to it in a timely manner, encroached upon its "exclusive market area," and sought to replace it with a competitor.  The trial court was justified in refusing to accept these factual allegations as true because they are refuted by the terms of the authentic, unambiguous documents that are a part of the pleadings.

The contract in issue consists of a two-page "Dealer Agreement" and a nine-page document labelled "Dealer Agreement Standard Provisions" to which is attached three pages of "schedules."  The contract provides, "This agreement shall be governed by and interpreted in accordance with the laws of the State of Michigan."

The law of Michigan is the same as Virginia's on the subject of contract interpretation.  A contract must be construed as

written and as a whole with all parts being harmonized whenever possible. Associated Truck Lines, Inc. v. Baer, 77 N.W.2d 384, 386 (Mich. 1956); Paramount Termite Control Co. v. Rector, 238 Va. 171, 174, 380 S.E.2d 922, 925 (1989).

Relevant to the dealer's breach-of-contract argument, the Agreement makes clear that the dealer's appointment is as a "nonexclusive authorized dealer" and that likewise the dealer's trade area, designated in the contract as "Primary Area of Responsibility," (PAR) is not exclusive to the dealer. Indeed, paragraph 18(a) of the Standard Provisions gives the manufacturer the absolute right to alter the dealer's PAR and to appoint additional dealers within that area.

Additionally, the dealer's claim that it has been "terminated" is contradicted by the plain language of the contract as amplified by the attrition letter. Consistent with the manufacturer's absolute rights set forth in paragraph 18(a), the letter clearly explained that it was "not a termination notice," indicating the manufacturer would continue to do business as normal with the dealer.

Also, the dealer did not have the absolute right to sell or assign the dealership. Even though paragraph 18(d) acknowledges that the dealer "may sell" the dealership, this right is constrained by paragraph 18(c), which provides: "The Company . . . may refuse to appoint as an authorized dealer any purchaser or prospective purchaser of any of the shares or assets of the

Dealer."

Also, the plain language of the Dealer Agreement refutes any factual allegation that the company breached the contract for failure to deliver equipment in a timely manner. Paragraph 7(b) of the Standard Provisions provides that the company's supplier "shall not be responsible for . . . delays in shipments" of equipment.

Next, the dealer argues the trial court erred by "failing to consider" counts in the complaint alleging "fraudulent misrepresentation, promissory estoppel, and violation of the Michigan and Virginia franchise laws." Under this argument, the dealer contends the trial court erred "in failing to imply the covenant of good faith and fair dealing into the parties' agreement." There is no merit to this contention.

In Michigan, as in Virginia, when parties to a contract create valid and binding rights, an implied covenant of good faith and fair dealing is inapplicable to those rights. This is so under either the common law or the Uniform Commercial Code (even assuming a dealership agreement is a contract for the sale of goods). Generally, such a covenant cannot be the vehicle for rewriting an unambiguous contract in order to create duties that do not otherwise exist. Hubbard Chevrolet Co. v. General Motors Corp., 873 F.2d 873, 876-77 (5th Cir.), cert. denied, 493 U.S. 978 (1989) (applying Michigan law); Charles E. Brauer Co. v. NationsBank, 251 Va. 28, 35, 466 S.E.2d 382, 386 (1996). See

- 7 -

<u>also</u> Mich. Comp. Laws § 440.1203 (1994); Va. Code § 8.1-203.

We reject summarily the dealer's contention the trial court erred in dismissing the fraud claim. We apply Virginia law because fraud is a tort. Generalized, nonspecific allegations, such as those contained in this complaint, are insufficient to state a valid claim of fraud. <u>Tuscarora, Inc.</u> v. <u>B.V.A. Credit Corp.</u>, 218 Va. 849, 858, 241 S.E.2d 778, 783 (1978).

There is no merit to the dealer's contention that a "claim of promissory estoppel can be made under Virginia law." This Court has not recognized the doctrine, and today we decide that it should not be adopted in the Commonwealth. <u>W.J. Schafer Assoc., Inc.</u> v. <u>Cordant, Inc.</u>, 254 Va. ___, ___ S.E.2d ___ (1997).

Further, the dealer erroneously contends the trial court failed "to address or consider the question of the application of Michigan law." The relevance of Michigan law was debated during argument of counsel and the court plainly stated in the judgment order that the "clear and unambiguous terms of the Dealer Agreement gave full authority to [the manufacturer], under either Virginia or Michigan law, to do the acts which Plaintiffs complain of in their Bill of Complaint."

And, the trial court did not err by rejecting the dealer's argument and by ruling that the Michigan Franchise Investment Law, Mich. Comp. Laws, §§ 445.1501, <u>et</u> <u>seq</u>. (1989), does not govern this case. When a contract contains a choice of law

provision, the chosen jurisdiction's statutory law, as opposed to its common law, will not control when the statutes by their own terms do not apply. Peugeot Motors of America, Inc. v. Eastern Auto Distributors, Inc., 892 F.2d 355, 358 (4th Cir. 1989), cert. denied, 497 U.S. 1005 (1990).

In the present case, the Michigan franchise law is inapplicable because it contains a geographic limitation; it applies only to franchises "made" in Michigan. See Mich. Comp. Laws § 445.1504; Hacienda Mexican Restaurants v. Hacienda Franchise Group, 489 N.W.2d 108, 111 (Mich. App. 1992). Under paragraph (2) of the statute, a franchise agreement is "made" in Michigan "when an offer to sell is made" there, or if "an offer to buy is accepted" there, or "if the franchisee is domiciled" there, or if "the franchised business is or will be operated" there.

Here, the dealer does not allege that the Agreement was made in Michigan, that the dealer was offered the agreement in Michigan, that it accepted the Agreement in Michigan, that the dealer is domiciled in Michigan, or that the dealer's business will be operated in Michigan. Rather, the dealer alleges that it is a Virginia corporation with its principal place of business in South Boston, and that the manufacturer is a Delaware corporation with its principal place of business in Pennsylvania. The dealer's own allegations demonstrate that the Michigan franchise law cannot apply to this case.

Moreover, the trial court did not err in rejecting the dealer's argument that Virginia's Retail Franchising Act, Code §§ 13.1-557, et seq., is applicable here. For the purpose of this argument, we will assume the Act is relevant, rather than the statutes regarding farm machinery dealerships found in Code §§ 59.1-344, et seq. The franchising act is applicable if the "franchisee is required to pay, directly or indirectly, a franchise fee," Code § 13.1-559(A)(b)(3), that is, "a fee or charge for the right to enter into or maintain a business under a franchise, including a payment or deposit for goods, services, rights, or training." § 13.1-559(A)(g).

In effect, the dealer alleges it paid a franchise fee. It asserts it "is required to purchase training videos and programs; make payments for the use of cooperative advertising; and purchase tools, parts, and other goods and/or services" from the manufacturer.

These factual assertions are directly contradicted by the contract. Paragraph 18(c) plainly states: "The Dealer has not paid any fee for this agreement." Thus, the trial court did not have to accept as true the dealer's allegations regarding payment of fees for videos and other services.

Finally, the dealer argues that the trial court erred in refusing to grant the motion for leave to amend the complaint. We hold the court did not abuse its discretion in so ruling. A trial court may properly deny a motion for leave to amend when it

is apparent that such an amendment would accomplish nothing more than provide opportunity for reargument of questions already decided.  <u>Hechler Chevrolet</u>, 230 Va. at 403, 337 S.E.2d at 749.  This is such a case.

Consequently, we conclude there is no error in the judgment appealed from, and it will be

<u>Affirmed</u>.