Present:   Hassell, C.J., Keenan, Koontz, Kinser, Lemons, and
           Agee, JJ., and Russell, S.J.

JENNA DODGE, ET AL.
                    OPINION BY CHIEF JUSTICE LEROY R. HASSELL, SR.
v.  Record No. 070843                  June 6, 2008

TRUSTEES OF RANDOLPH-MACON WOMAN'S COLLEGE,
D/B/A RANDOLPH-MACON WOMAN'S COLLEGE

            FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                    J. Leyburn Mosby, Jr., Judge

     The narrow issue that we consider in this appeal is

whether the plaintiffs pled a cause of action for breach of a

contract that purportedly entitled them to receive a college

education in a predominantly female academic environment for

four years.

     The plaintiffs, Jenna Dodge, Sarah Hassmer, Hayley J.

Maxwell, Laura McKean-Peraza, Kelsey McCune, Jennifer C.

Mullins, Rebekah Lynn Pauli, Jessica Whittle, and Mary

Elizabeth Yardley, filed their complaint against the Trustees

of Randolph-Macon Woman's College, a Virginia nonstock

corporation.  The plaintiffs are students at the Randolph-

Macon Woman's College, a predominantly female liberal arts

college for approximately 115 years.

     The plaintiffs alleged in their complaint that when they

"accepted [the College's] offers of admission, paid tuition

and other fees, and registered for classes, a contract was

formed between them and the [College], which . . . included

the promise, both express and implied, that if [the plaintiffs] paid the tuition and fees and enrolled at [the College], they would receive a four-year liberal arts education at a woman's college."  The plaintiffs allege that they reasonably expected that the College would continue to offer "the curriculum plan as advertised in the college catalog and other promotional materials upon which Plaintiffs relied when choosing" to attend the College.  Continuing, the plaintiffs state that "[a]dditional terms of the contracts are within the various official [College] publications, including promotional materials, the [H]onor [C]ode, the student handbook, the academic catalog, correspondence between [the College] and the students, and the [C]ollege's policies and regulations."

The plaintiffs allege in the complaint that they chose to attend the College "specifically in order to obtain a four-year liberal arts college degree . . . in a single-sex environment."  The plaintiffs allege that the College's 2005-07 Academic Catalog states:  "Last, and most important, Randolph-Macon Woman's College offers an education fully and completely directed toward women.  In a time of increasing opportunities for women, it is essential that the undergraduate years help the student build confidence,

establish identity, and explore opportunities for careers and for service to the society that awaits her."

According to the plaintiffs' allegations, the College announced in August 2006 that its Trustees would approve a strategic plan that included, among other things, a transition from a predominantly female educational institution to a coeducational college that would offer a new curriculum identified as "global honors."

The plaintiffs allege that when the Trustees approved the strategic plan, the College anticipatorily breached its contracts with them. The plaintiffs asked that the circuit court enter a declaration that the College breached its contracts, and the plaintiffs sought an injunction requiring the College to remain a predominantly women's college until the fall of 2010, when all the plaintiffs would have graduated.

The College filed a motion for a "bill of particulars and craving oyer." The litigants agreed upon an order requiring the plaintiffs to file a bill of particulars and the documents that the plaintiffs claim comprise their contracts with the College.

The plaintiffs filed a bill of particulars and they alleged the following: "There is only one contract between each one of the [p]laintiffs and Randolph-Macon Woman's

3

College" and that a contract was established when they "accepted their respective offers and matriculated according to [the College's] schedule for their respective initial academic years to begin their promised four-year education at [Randolph-Macon Woman's College]." The plaintiffs attached numerous documents to their bill of particulars that purportedly contain the contract, including: letters of offers of admission from the College's Admissions Committee; correspondence, including e-mail, among the College's representatives and the students; and the College's 2005-07 Academic Catalog.

The College filed a demurrer and asserted that the plaintiffs failed to identify or plead the existence of a contract between the plaintiffs and the College in the bill of particulars and attached documents. The circuit court considered the pleadings, documents, and legal memoranda and entered an order sustaining the demurrer and dismissing the complaint. The plaintiffs appeal.

The plaintiffs contend that they pled a cause of action for breach of contract. The plaintiffs assert that the relevant terms of their contracts with the College are contained in the standardized acceptance letters that the plaintiffs received from the College and other documents. Continuing, the plaintiffs argue that the following paragraph

4

in their complaint contains facts sufficient to establish the existence of a contract:

> "When [the plaintiffs] accepted [the College's] offers of admission, paid tuition and other fees, and registered for classes, a contract was formed between them and the school, which, inter alia, included the promise, both express and implied, that if [the plaintiffs] paid the tuition and fees and enrolled at [the College], they would receive a four-year liberal arts education at a woman's college."

We disagree with the plaintiffs' contentions.

The principles governing our review of a circuit court's consideration of a demurrer are well established. A demurrer admits the truth of all properly pleaded material facts. "All reasonable factual inferences fairly and justly drawn from the facts alleged must be considered in aid of the pleading. However, a demurrer does not admit the correctness of the pleader's conclusions of law." Fox v. Custis, 236 Va. 69, 71, 372 S.E.2d 373, 374 (1988); accord Tronfeld v. Nationwide Mut. Ins. Co., 272 Va. 709, 713, 636 S.E.2d 447, 449 (2006); Fuste v. Riverside Healthcare Ass'n, 265 Va. 127, 131-32, 575 S.E.2d 858, 861 (2003).

When, as in this case, the circuit court grants a demurrant's motion craving oyer, the circuit court in ruling on the demurrer may properly consider the facts alleged as amplified by any written documents added to the record as a result of the motion. Ward's Equipment, Inc. v. New Holland

5

N. Am., Inc., 254 Va. 379, 382, 493 S.E.2d 516, 518 (1997); Hechler Chevrolet, Inc. v. General Motors Corp., 230 Va. 396, 398, 337 S.E.2d 744, 746 (1985).  A circuit court "considering a demurrer may ignore a party's factual allegations contradicted by the terms of authentic, unambiguous documents that properly are a part of the pleadings."  Ward's Equipment, Inc., 254 Va. at 382, 493 S.E.2d at 518.

Additionally, "[i]t is fundamental that no person may be subjected by law to a contractual obligation, unless the character of the obligation is definitely fixed by an express or implied agreement of the parties.  In order to be binding, an agreement must be definite and certain as to its terms and requirements; it must identify the subject matter and spell out the essential commitments and agreements with respect thereto."  Progressive Constr. Co. v. Thumm, 209 Va. 24, 30-31, 161 S.E.2d 687, 691 (1968) (citation omitted).  The terms of the contract must be clear, definite, and explicit.  See Judicial Inquiry and Review Commission of Va. v. Elliott, 272 Va. 97, 119, 630 S.E.2d 485, 496 (2006); Chang v. First Colonial Savings Bank, 242 Va. 388, 391, 410 S.E.2d 928, 930 (1991).  A contract must be sufficiently definite to enable a court to give the contract an exact meaning, and the contract must obligate the contracting parties to matters that are definitely ascertained or ascertainable.  Smith v. Farrell,

6

199 Va. 121, 128, 98 S.E.2d 3, 7 (1957). A contract is not valid and it is unenforceable if the terms of the contract are not established with reasonable certainty. Id.

Applying the aforementioned principles, we hold that the plaintiffs failed to plead facts, which if established at trial, would demonstrate the existence of a contract that required the College to operate an academic institution predominantly for women during the four years that the plaintiffs expected to attend the College. Even though the plaintiffs referenced numerous documents, this Court, just as the circuit court, has reviewed the documents and can find no such promise. There is no language in any of these documents in which the College made a clear, definite, and specific promise to operate a college predominantly for women during the duration of the plaintiffs' academic studies at the College. Thus, we hold that the plaintiffs failed to plead the existence of a contract between the parties.

Contrary to the plaintiffs' contentions, the College's articles of incorporation do not form the basis of a contract between the students and the College. By its very nature, the articles of incorporation do not contain a clear, definite, and explicit agreement among the parties to the alleged contract.

In conclusion, our narrow holding in this appeal is that the plaintiffs failed to plead the existence of a clear, definite, and explicit contract between the plaintiffs and the College that required the College to provide a four-year education for the plaintiffs in an academic environment predominantly for women.  In view of this holding, we need not consider the litigants' remaining arguments.  Accordingly, we will affirm the judgment of the circuit court.

Affirmed.

JUSTICE LEMONS, with whom SENIOR JUSTICE RUSSELL joins, dissenting.

I do not fundamentally disagree with the principles of law cited by the majority.  I simply disagree with their application in this case.

We have often warned our trial courts about granting motions that "short circuit" the legal process and deprive litigants of their "day in court and depriv[e] this Court of an opportunity to review a thoroughly developed record on appeal."  Seyfarth, Shaw, Fairweather & Geraldson v. Lake Fairfax Seven Ltd. P'ship, 253 Va. 93, 95, 480 S.E.2d 471, 472 (1997).  Unfortunately, that principle is not followed in this case.  When we consider an appeal based upon grant of a demurrer, we do not decide the merits of the case.  We only decide the adequacy of pleadings.  Fuste v. Riverside

8

Healthcare Ass'n, Inc., 265 Va. 127, 131-32, 575 S.E.2d 858, 861 (2003). Additionally, we must "consider as true the facts alleged [in the complaint], the facts impliedly alleged, and the reasonable inferences of fact that can be drawn from the facts alleged." Almy v. Grisham, 273 Va. 68, 77, 639 S.E.2d 182, 186 (2007).

Among the facts properly pled that should be sufficient to survive demurrer are:

1. When "[Students] accepted [the College's] offers of admission, paid tuition and other fees, and registered for classes, a contract was formed between them and the school, which, *inter alia*, included the promise, both express and implied, that if [Students] paid the tuition and fees and enrolled at [the College] they would receive a four-year liberal arts education at a women's college."

2. "[The College] routinely used oral and written communications, as well as the College's 115-year reputation, to promote the institution and its mission: providing a liberal arts education to women only."

3. "The College attracted Students in large part due to [the College's] oral and written representations regarding these unique aspects of [the College]. Students relied on such statements in accepting the College's offers of admission."

4. Additional terms of the contract, to the extent relevant, are found "within the various official [College] publications, including promotional materials, the honor code, the student handbook, the academic catalog, correspondence between [the College] and the [S]tudents, and the [C]ollege's policies and regulations."

9

5. The acceptance letters to the Students contained reference to the specific date of their expected graduation four years hence.

6. The acceptance letters to the Students referred to "The Macon Plan, 'which will serve as a guide through your four years at Randolph-Macon Woman's College.' "

7. Promotional material used in the admissions process and sent to prospective students included a speech by a former President of the College entitled "Why a Women's College?" and answered the question in part by observing:

> [w]omen's colleges address a need that can be addressed in no other way. In classrooms of women only, it is a given that women's comments will be taken seriously. In classrooms of female students, there are no male students to find you stupid, or, worse yet, to find you unattractive or even unfeminine if you speak up and know the answers. In women's classrooms it's OK to be both smart and good-looking, and there is no tacit pressure to conceal intelligence or convictions. Moreover, in classrooms of women, the culture of academic competition can also be a culture of collaboration (which often yields superior results).

8. The Students relied on these and other written and oral promises that their education would be for four years in a primarily women's college.

While the majority cites Smith v. Farrell, 199 Va. 121, 98 S.E.2d 3 (1957), it does not include the following observation in that case:

> Another essential element of a valid contract is certainty and completeness. The element of completeness denotes that the contract embraces all the material

10

> terms; that of certainty denotes that each one of those terms is expressed in a sufficiently exact and definite manner. An incomplete contract, therefore, is one from which one or more material terms have been entirely omitted. An uncertain contract is one which may, indeed, embrace all the material terms, but one of them is expressed in so inexact, indefinite or obscure language that the intent of the parties cannot be sufficiently ascertained to enable the court to carry it into effect.

Id. at 127-28, 98 S.E.2d at 7. I do not find the pleadings in this case to be either uncertain or incomplete. Especially troubling is the grant of a demurrer in the face of allegations of oral promises from the College to the Students which can only be tested at trial. The Students may or may not prevail at trial, but that question is not properly before us. The proper question is whether they alleged sufficient facts to survive demurrer. The record reveals that they did; consequently, I respectfully dissent from the majority opinion and judgment of this Court.

11