# CIRCUIT COURT OF CHESTERFIELD COUNTY

Roger Habeck

v.

Sandee Cosby
David Cosby,
G. B. Spencer,
Sandra Spencer,
Keith Andrew,
Shannon Andrew,
and Diane Barber

January 22, 2009

Case No. CL08-2011

BY JUDGE HERBERT C. GILL, JR.

This matter came before the Court on November 14, 2008, upon the Defendants' Demurrers, Plaintiff's Opposition, Defendants' Rebuttal and Reply, and Plaintiff's Motions to Compel. Upon review of the relevant statutes, case law, and filings of the parties, the Court now issues its ruling.

The Court sustains the Defendants' Demurrers. Footnote 2 of the Demurrer filed by Defendants Andrew and Barber is struck from the record. The Court denies the Plaintiff's Motion to Compel.

## I. *Defendants' Demurrers*

When considering a demurrer, a Court "tests only the legal sufficiency of a pleading, not matters of proof." *Luckett v. Jennings*, 246 Va. 303, 307, 435 S.E.2d 400, 402 (1993). It is well-established law that "a trial court must

consider the pleading in the light most favorable to the plaintiff and sustain the demurrer if the pleading fails to state a valid cause of action." *Id.* The Court "accepts as true all properly pleaded facts and all inferences fairly drawn from those facts." *Augusta Mut. Ins. Co. v. Mason*, 274 Va. 199, 204, 645 S.E.2d 290, 293 (2007) (citing *Glazebrook v. Board of Supervisors*, 266 Va. 550, 554, 587 S.E.2d 589, 591 (2003)). Further, the Court "may properly consider the facts alleged as amplified by any written agreement added to the record on the motion" or otherwise properly part of the pleadings. *Ward's Equip., Inc. v. New Holland N. Am.*, 254 Va. 379, 383, 493 S.E.2d 516, 518 (1997). The Court's purpose is to determine "whether a motion for judgment states a cause of action upon which the requested relief may be granted." *Tronfeld v. Nationwide Mut. Ins. Co.*, 272 Va. 709, 712, 636 S.E.2d 447, 449 (2006).

## A. *Defamation*

On Counts I through IV, for defamation, "[t]he threshold issue, whether the complained of phrase[,] including inferences fairly attributable to it[,] could reasonably be interpreted as stating actual facts about [the Plaintiff] and, therefore, be actionable defamation, is a matter of law to be resolved by the trial court." *Yeagle v. Collegiate Times*, 255 Va. 293, 297, 497 S.E.2d at 138 (1998). In other words, for a statement to be actionable, the question is not whether an individual reader actually viewed the letters as stating facts, but whether the hypothetical reasonable person would objectively view the letters as factual averments.

While the Supreme Court of the United States has refused to recognize "still another first amendment-based protection for defamatory statements that are categorized as 'opinion' as opposed to 'fact'," *Milkovich v. Lorrain J. Co.*, 497 U.S. 1, 17, 110 S. Ct. 2695, 111 L. Ed. 2d 1 (1990), the Court recognized that constitutional doctrine secures the "breathing space [that] freedoms of expression require to survive." *Milkovich*, 497 U.S. at 18 (quotations omitted). Part of that doctrine is that "a statement of opinion relating to matters of public concern which does not contain a provably false connotation will receive full constitutional protection," *id.*; see also *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 106 S. Ct. 1558, 89 L. Ed. 2d 783 (1986), as will "statements that cannot reasonably be interpreted as stating actual facts about an individual." *Milkovich*, 497 U.S. at 19 (quotations omitted). As the Supreme Court states, "This provides assurance that public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical hyperbole' [that] has traditionally added much to the discourse of our nation." *Id.*

The Court's analysis in *Milkovich*, 497 U.S. 1, 110 S. Ct. 2695, 111 L. Ed. 2d 1 (1990), to determine whether an alleged defamation implies or states "actual facts about an individual" suggests that a court should consider the type of language used, the meaning of the statements in context, whether the statement is verifiable, and the broader social circumstances in which the statement was made. *Id.* at 18-19.

Mr. Habeck has, in essence, alleged the totality of the two letters as the defamatory statements upon which he claims redress. The Plaintiff correctly stated that the allegedly defamatory statements "must not be considered in isolation . . . but, rather, we must consider these statements in relationship to the opinions and facts contained in the paragraphs at issue. . . ." *American Communs. Network, Inc. v. Williams*, 264 Va. 336, 341-42, 568 S.E.2d 683, 686 (2002). Additionally, it is true that "a defamatory charge may be made by inference, implication, or insinuation." *Fuste v. Riverside Healthcare Assoc.*, 265 Va. 127, 132, 575 S.E.2d 858, 861 (2003) (quotations omitted). Therefore, the Court considers the July 10th letter to Kingsland Road Residents and the letter to the editor each as a whole, with due consideration given to innuendo.

It is informative to notice that the letters are filled with strong, emotional language, for example, "significant emotional and financial ruin" and "squash us like insects." Additionally, there is a definite current of angry sarcasm in the letters, notably the statement "he has made this proposal sound like the greatest idea since the light bulb." The tone of these letters suggests that they are not to be read as objective, nor as unbiased, in fact, the tone of the letters makes if very clear that the majority, if not all of the content, is subjective. This is the very type of "loose, figurative, [and] hyperbolic language [that] would negate the impression," *Milkovich*, 497 U.S. at 21, that the writer was stating fact.

Along with the tone and social circumstances of the letters, the Court considers whether the statements made in the letters are verifiable. The first statement Habeck objects to is the statement that he "is being paid by developers." Habeck admits in his complaint that he is working for neighbors of the defendants. Complaint, ¶ 20. Were Habeck to argue that he was not hired by anyone, this statement would clearly be verifiable. However, if the issue, as it appears to be, is whether Mr. Habeck is employed by "developers," the Court holds that this is not a verifiable statement. The term "developer" is simply subject to too many definitions and subjective interpretations. A homeowner may be a "developer" by way of seeking to improve their property, while a "developer" may also be an outside buyer seeking to change the nature of property.

Next, the letter asserts that these developers have hired Mr. Habeck to "ram an unwanted and unneeded sewer line down our throats," later, that "he is simply attempting to put in motion a scheme that will coerce . . . residents," and finally, that "this plan reeks of extortion." These statements, again, are verifiable if Mr. Habeck has not been hired to promote a sewer line and has not taken any action to promote that sewer line. However, if Mr. Habeck merely objects to the characterization of his work, this negative tone is clearly subjective and not subject to verification. Whether these descriptions are true in this case, would appear to depend on one's position on the sewer line itself, not on Mr. Habeck or his actual methods. Additionally, whether the sewer line is wanted or not is clearly not verifiable, as no two people would necessarily agree on the matter. In fact, the use of the term "extortion" mirrors very closely the use of the term "blackmail" in *Greenbelt*, 398 U.S. 6, 90 S. Ct. 1537, 26 L. Ed. 2d 6 (1970), in which the Supreme Court of the United States held "even the most careless reader must have perceived that the word was no more than rhetorical hyperbole, a vigorous epithet used by those who considered [the developer's] negotiating position extremely unreasonable." *Greenbelt Coop. Publ. Assoc., Inc. v. Bresler*, 398 U.S. 6, 13, 90 S. Ct. 1537, 26 L. Ed. 2d 6 (1970).

Next, Habeck objects to the assertion that the Defendants or recipients of the letter would be forced to pay for the sewer line. As this is not a statement as to Mr. Habeck, his actions, his character, or his goals, the statement is not actionable, whether correct or incorrect. The same is true regarding any statements made in the letters regarding potential future actions of Chesterfield County and the future repercussions of those actions, which are not verifiable as they speak to things that have not happened yet. While Habeck notes that the proper standard is whether "the publication was in its description or identification such as to lead those who knew or knew of the plaintiff to believe that the article was intended to refer to him," *The Gazette, Inc. v. Harris*, 229 Va. 1, 37, 325 S.E.2d 713, 738 (1985) (quotations omitted), this standard does not allow the Court to interpret statements regarding third parties as against him when they clearly are not.

Mr. Habeck also objects to the statement that "this guy [Habeck] does not give a rat's tail about any of us." While this statement may not reflect Mr. Habeck's belief or knowledge of his own affections, the statement cannot be verified. This is clearly a subjective statement, and not an articulation of an objectively verifiable event. The trier of fact would be incapable of reading Mr. Habeck's mind.

Also, Mr. Habeck appears to assert that the statement "we will have only 10 years to pay for it, not 20 years as Habeck stated in the newspaper" is the functional equivalent of calling Mr. Habeck a liar. While it is possible for

some to interpret the letter that way, it is written in such a manner as to more reasonably suggest the letter seeks to correct a misstatement on Mr. Habeck's part. In fact, the letter states that the article in which Mr. Habeck is quoted was attached to the letter, allowing for individuals to verify for themselves whether Mr. Habeck in fact said the line would be paid back in twenty years.

Additionally, the statements must be considered in the broader social circumstances, as a reasonable person would understand them. The statements in question were made by citizens regarding a matter of public concern as to government action; that is, the statements were made in a letter-writing campaign and letter to the editor as part of a community-organizing effort regarding a proposed sewer assessment district. Under the common law, "comment was generally privileged when it concerned a matter of public concern, was upon true or privileged facts, represented the actual opinion of the speaker, and was not made for the sole purpose of causing harm." *Milkovich*, 497 U.S. at 13-14. This clearly appears to be the case in this matter.

In conclusion, considering the letters as a whole in the context of a community organizing effort, considering the unverifiable nature of most, if not all, of the objected-to statements, and considering the general "loose, figurative, [and] hyperbolic," nature of the language, the Court holds that no reasonable person would have interpreted the letters as stating actual facts about Mr. Habeck. None of these statements can fairly be said to impute unfitness in the performance of Mr. Habeck's duties, suggest a lack of integrity on Mr. Habeck's part, or otherwise prejudice him in his profession, as Mr. Habeck asserts in his Complaint. Moreover, these letters do not, as Mr. Habeck asserts, suggest he is manipulating the government or engaging in corrupt practices. The Court sustains the Demurrers as to Defamation.

## B. *Civil Conspiracy*

The Defendants G. B. Spencer, Sandra Spencer, Keith Andrew, Shannon Andrew, and Diane Barber also demur to Counts III and IV on the basis that facts sufficient to support the claims for civil conspiracy were not pleaded. As the basis of the civil conspiracy claims was the unlawful defamation, and the Demurrers as to Defamation were sustained, so too are the Demurrers as to Civil Conspiracy

## C. *Speaking Demurrer*

Mr. Habeck properly objects to footnote 2 of the Demurrer filed by Defendants Andrew and Barber as a speaking demurrer. Footnote 2 is therefore struck from the record.

## II. *Plaintiff's Motions to Compel*

Having sustained the Defendants' Demurrers, the Court denies the Plaintiff's Motions to Compel. There is no reason to compel discovery with no sufficiently pleaded cause of action going forward.