# CIRCUIT COURT OF THE CITY OF ROANOKE

Vogen Funding, L.P.

v.

Barbara Wener et al.,
Ex'rs of the Estate of
Stephen Wener,
deceased, et al.

Case No. CL09-167

By Judge Clifford R. Weckstein

April 23, 2010

The "Executive Defendants," ten individuals who were officers or directors of New River Industries, Inc., or who had ownership interests in New River, have demurred to Vogen Funding, L.P.'s amended complaint. The demurrers have been briefed and argued, a second round of briefing took place after the initial argument, and a hearing was held today at which counsel had the opportunity to present further argument. This letter memorializes the ruling announced at today's hearing: The court finds that the amended complaint fails to state a claim upon which relief against these defendants can be granted and, accordingly, sustains their demurrers. The plaintiff has declined the opportunity to replead, and a final order sustaining the demurrers of the Executive Defendants will therefore enter, dismissing with prejudice the plaintiff's claims against those defendants.

By order entered on September 10, 2009, incorporating an opinion letter dated August 10, 2009 (reported at 78 Va. Cir. 448 and 2009 Va. Cir. LEXIS 180), this court ruled on demurrers to Vogen's original complaint. That order and opinion letter are incorporated herein by this reference.

A demurrer tests "the legal sufficiency of facts alleged in pleadings." *Schmidt v. Household Fin. Corp., II*, 276 Va. 108, 112, 661 S.E.2d 834 (2008). When ruling on a demurrer, the court confines its analysis to the facts alleged in the complaint, *Elliott v. Shore Stop, Inc.*, 238 Va. 237, 239-40, 384 S.E.2d 752 (1989), and in documents that are part of the pleadings, *Ward's Equip., Inc. v. New Holland N. Am.*, 254 Va. 379, 383, 3493 S.E.2d 516 (1997), and accepts as true "all properly pleaded material facts. All reasonable factual inferences fairly and justly drawn from the facts alleged must be considered in aid of the pleading. However, a demurrer does not admit the correctness of the pleader's conclusions of law." *Bell v. Saunders*, 278 Va. 49, 53, 677 S.E.2d 39 (2009) (internal quotation marks and citations omitted).

According to its amended complaint, Vogen Industries, L.P., entered into a written contract with New River Industries under which Vogen loaned $2.4 million to New River. Shortly after receiving Vogen's money, New River filed for bankruptcy protection, and, in due course, the Bankruptcy Court entered a discharge order extinguishing New River's obligation to Vogen. In this suit, Vogen seeks to recover from others the money that it loaned to New River.

Vogen's pleading alleges that the Executive Defendants employed a third-party consultant "through whom most written communications with Vogen were channeled." (¶ 23.) Through this consultant, the Executive Defendants knowingly gave Vogen documents and information about New River's present and projected financial condition (¶¶ 24-25) that were materially false, fraudulent, and misleading. (¶¶ 26-29.) The Executive Defendants did these things, the pleading says, "during the pre-closing negotiations related to the subject loan transaction" [with New River] (¶ 23), knowing and intending that Vogen would rely on "such information to determine whether it would agree to fund the subject loan" [to New River] (¶¶ 31-32), fraudulently inducing Vogen to lend $2.4 million to an insolvent corporation, New River (¶ 40).

The Loan Agreement incorporated in the amended complaint identifies "the balance sheet, profit and loss statement, and statement of cash flows and each interim financing statement," documents referred to in these allegations of the amended complaint, as "heretofore furnished to Lender by Borrower." Loan Agreement, ¶ 5.7. "Lender" refers to Vogen; "Borrower" to New River." Loan Agreement, Preamble and ¶¶ 1.3 and 1.14. "[A] court considering a demurrer may ignore a party's factual allegations contradicted by the terms of authentic, unambiguous documents that properly are a part of the pleadings." *Ward's Equip.*, 254 Va. at 383.

"[T]he money loaned by Vogen to New River was used to pay off a then-existing senior loan that was personally guaranteed by one or more of the Executive Defendants, as a result of which said personal guaranties were

extinguished in advance of the bankruptcy petition that was thereafter filed on behalf of New River." (¶ 41.)

Paragraph 30 of the Amended Complaint highlights the difficulty that Vogen has in stating a claim against the Executive Defendants. That paragraph, rather than stating "facts on which the party relies," *see* Rule 1:4(e), states a bare legal conclusion:

> At the time that the Financial Statements were disclosed to Vogen and at all subsequent times related to pre-loan negotiations, the Executive Defendants owed Vogen an independent duty not to commit fraud, which duty existed separate and apart from any contractual duties that would thereafter arise between Vogen and New River, when the Loan Agreement was subsequently executed.

*Id.*

The Executive Defendants, it will be remembered, are identified in the complaint only as owners, officers, and directors of New River, of the Delaware corporation with which Vogen was negotiating and with which Vogen entered into the loan agreement. The Executive Defendants are Stephen Wener (identified in the amended complaint as "an Owner/Director/Officer of New River Industries, Inc."), Kenneth C. Ehrhardt ("a Director/Officer"), G. Barry Morrow ("Officer/Director"), Paul S. Poandl ("Officer"), Kurt T. Borowsky ("Director"), William Cohen ("Owner/Director"), Howard Rubin ("Director"), J. Douglas Smith ("Owner/Director"), John J. Hickey, Jr. ("Director"), and Raymond Hutchinson ("Officer"). *See* Amended Complaint, ¶¶ 2-11. The Loan Agreement identifies New River as a Delaware corporation. To recover for fraud, however (or for any other tort), Vogen must first allege facts from which a jury or judge could find that that these defendant owed Vogen "a common law duty, not one existing between the parties solely by virtue of the contract." *Augusta Mut. Ins. Co. v. Mason*, 274 Va. 199, 205, 684 S.E. 2d 290 (2007); *see Glisson v. Loxley*, 235 Va. 62, 66, 366 S.E.2d 68 (1988) (tort claim requires duty, breach, causation, loss). "The mere use of violent terms in characterizing the procurement of a contract and its breach will not avail to convert a breach of the contract into a tort." *Jewett v. Ware*, 107 Va. 802, 806, 60 S.E. 131 (1908).

Noting that the Supreme Court of Virginia cited, quoted, and relied upon the Restatement (Second) of Torts, § 551 (1977) in *Ware v. Scott*, 220 Va. 317, 320-321, n. 3, 257 S.E.2d 855 (1979), Vogen erroneously suggests that "an independent duty not to commit fraud" can be derived from § 551 and an "illustration" to the drafters' Comments on that section. Captioned "Liability for Nondisclosure," § 551, reads as follows:

(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

(a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and

(b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and

(c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and

(d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and

(e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

*Id.* In argument on the demurrers, plaintiff called to the court's attention one of the two illustrations following Comment C on Clause 2 of § 551. It reads:

2. A, the president of a mercantile corporation, makes a true statement of its financial position to a credit rating company, intending the substance to be published by it to its subscribers. The corporation's financial position becomes seriously impaired, but A does not inform the credit rating company of this fact. The corporation receives goods on credit from B, a subscriber of the rating company, who when the goods are bought is relying, as A knows, on the credit rating based on his statements to the rating company. A is subject to liability in deceit to B.

This illustration, Vogen contends, demonstrates that the Executive Defendants were "under a duty to [Vogen] to exercise reasonable care to disclose the matter in question," under Clause 1 of § 551. When the

demurrers were argued on February 16, 2010, the court asked counsel for Vogen for citation of cases that followed Vogen's interpretation of § 551 and the quoted comment. Counsel having none at hand, the court offered Vogen the opportunity, which it accepted, to search for and submit authority from any jurisdiction in the United States interpreting § 551 as Vogen argued it should be interpreted in this case or otherwise supporting the proposition that, in a commercial transaction between Blackacre and Whiteacre, an officer or director of Blackacre has a duty to disclose or a duty to exercise reasonable care to disclose to Whiteacre a fact that he knows may justifiably induce Whiteacre to act, or refrain from acting, in the business transaction. The parties agreed on a new briefing schedule, and an order memorializing that agreement was entered on March 1, 2010.

Vogen cited three cases, *Lombardo v. Albu*, 14 P.3d 288 (Ariz. 2000) (obligations of "buyer's real estate agent" under Arizona law); *Viske v. Flaby*, 316 N.W.2d 276 (Minn. 1982) (jury's verdict confirmed in a securities fraud case in which corporate officers were active participants in an ongoing scheme to swindle elderly and infirm victims); *Townsends, Inc. v. Beaupre*, 716 N.E.2d 160 (Mass. App. 1999) (corporate officer can be responsible for corporation's torts that officer personally commits; this officer was not). None of these cases are persuasive authority for the proposition that, on the facts pleaded in this case, the Executive Defendants owed an independent common-law duty to Vogen.

Vogen's reliance on the Illustration to Comment C of Clause 2 of Restatement § 551 is also misplaced. Clause 2 deals with relationships between parties to a business transaction. The parties to this business transaction, as the Loan Agreement specified, were Vogen and New River. Further, and significantly, Comment C addresses "subsequently acquired information" that a party knows "will make untrue or misleading a previous representation that when made was true or believed to be so." Vogen nowhere alleges that any of the Executive Defendants made representations that were true or that they believed were true.

April 16, 2012

The court will sustain the Executive Defendants' demurrers to Vogen Funding's second amended complaint and dismiss with prejudice Vogen's suit against the Executive Defendants.

This opinion letter is not freestanding. I incorporate by reference orders entered on September 10, 2009, and September 1, 2010, sustaining demurrers to Vogen's initial and first amended complaints; those orders incorporate, and I specifically incorporate in this letter, the opinion letters dated August 10, 2009, and April 23, 2010. In this letter, I try to avoid restating anything said in the earlier opinion letters and orders. When I make statements of law in this letter and do not cite authorities to support

those statements, it is because those propositions, and the authority in support of those propositions, have been set forth in the previous orders and letter opinions.[1]

It has taken me some time to realize that the court, abetted by counsel, has done something that lawyers do extremely well: overintellectualized and overcomplicated the issue raised by these demurrers. *Cf. United States v. Scophony Corp. of Am.*, 333 U.S. 795, 820 (1948) (Frankfurter, J., concurring) ("No doubt legal reasoning must be on its guard not to oversimplify. Dangers also lurk in overcomplicating."); *Jones v. Frederick County Bd. of Educ.*, 689 F. Supp. 535, 540 (D. Md. 1988) (doctrine "is yet another attempt by the legal profession to make the simple complex").

In its earlier orders and opinion letters, the court determined that neither Vogen's original pleading nor its first amended complaint stated facts upon which relief could be granted. The court's present duty, then, is simply to identify the new factual allegations in the second amended complaint, and to determine whether they, independently or in combination with allegations previously made and repeated in the new pleading, are sufficient "to constitute a foundation in law for the judgment sought." *Dunn, McCormack & Macpherson v. Connolly*, 281 Va. 553, 557-58, 708 S.E.2d 867, 870-71 (2011). In this determination, the court must, of course, "accept as true all properly pleaded facts and all inferences fairly drawn from those facts." *Id.* (quoting *Abi-Najm v. Concord Condominium, L.L.C.*, 280 Va. 350, 356-57, 699 S.E.2d 483, 486-87 (2010)).

The second amended complaint contains two counts seeking relief against the Executive Defendants, prefaced by eighteen paragraphs devoted to "parties, jurisdiction, and venue" and "common factual allegations." There are no new allegations in the first twenty paragraphs of the pleading.

Count I is captioned "Fraud in the Inducement—The Executive Defendants." The caption on Count II is "Fraudulent Inducement/Piercing the Corporate Veil—Wener, Ehrhardt, Morrow, and Cohen." Each count begins with an allegation that was not made in the previous amended complaint. These allegations are significant, because each of them establishes the context for the assertions that follow.

Vogen begins Count I with the allegation that "the Executive Defendants were New River's agents for purposes of negotiating the Loan Agreement with Vogen." Second Amended Complaint, ¶ 21.

Similarly, Count II begins with the allegation that "New River, through the acts of its agents, the Executive Defendants, fraudulently induced Vogen to enter into the Loan Agreement." *Id.*, ¶ 71. "Fraudulently," of course, is a statement of legal conclusion. *See Station # 2, L.L.C. v. Lynch*, 280 Va. 166, 173, n. 5, 695 S.E.2d 537, 541, n. 5 (2010); *American Net & Twine Co. v.*

---

[1] The earlier opinions identify the parties and the other entities and persons to whom the court refers in this opinion letter. Two of the Executive Defendants, Stephen Wener and Paul S. Poandl, have died, and their personal representatives have been substituted as parties.

*Mayo,* 97 Va. 182, 185-86, 33 S.E. 523, 525 (1899). The rest of the sentence is a statement of fact, accepted as true for present purposes.

### The New Allegations in Count I

In Count I, Vogen makes new allegations that the Executive Defendants ("New River's Agents for the purpose of negotiating the Loan Agreement with Vogen" (¶ 21)) "intended that Vogen would rely upon the information contained in the Financial Statements to determine whether it would enter into the Loan Agreement." (¶ 25.) The Executive Defendants, the new pleading alleges, believed that the financial statements were accurate when they furnished the statements to Vogen. (¶ 28.) (Or, in the alternative — and as Vogen said in its previous pleadings — the Executive Defendants knew that the financial statements were false and misleading at the time they gave the statements to Vogen (¶ 27).)

Beginning at ¶ 29 of the second amended complaint, Vogen describes an inquiry that it directed to Joseph Palazzi. Palazzi is described in the pleading as a third-party consultant whom the Executive Defendants employed as their agent during the preclosing negotiations related to the loan agreement,"through whom most communications with Vogen were channeled" (¶ 22, which is substantially identical to ¶ 23 in the first amended complaint). According to Vogen's pleading, the inquiry sought an explanation for an adjustment shown on New River's September 2006 financial statement. This adjustment, Palazzi replied, reflected a "retroactive price adjustment" to a lower rate that it would pay in the future, meaning that New River's "fourth quarter margins are more representative of what the business will earn in 2007." (¶¶ 29–31.)

The price adjustment to which Palazzi's communication referred was granted to New River by Dillon Yarn, of which Steven Wener was an owner, officer, and director. (¶ 32.) However, the inferences to be drawn from Palazzi's communication were misleading and were false. (¶ 33.)

Before New River and Vogen entered into the Loan Agreement, the Executive Defendants knew what Palazzi had told Vogen. When they learned what Palazzi had said, the Executive Defendants either knew that what he said was false or believed that it was true. (¶¶ 34-36.)

After hearing from Palazzi, Vogen communicated by telephone with defendant Morrow as the President of New River. He confirmed what Palazzi had said. Morrow either believed that what he was saying was true or knew that it was false; either way, what Morrow said was false and misleading. (¶¶ 37–39.) The other executive defendants, when they learned of Morrow's confirmation, either believed that what Morrow said was accurate or knew that what he said was false and misleading. (¶¶ 40-42.)

More than a month after Palazzi's communication, defendant Wener sent an e-mail to defendant Morrow, with a copy to defendant Cohen. In this e-mail, Wener stated that he had concluded, after a sleepless weekend of going over figures, that "it is time to close down the operations" of New River. Within a short time, all of the Executive Defendants were aware of Wener's e-mail. As a result of this e-mail, all of the Executive Defendants knew that New River's financial statements were false and misleading, all of the Executive Defendants knew that what Palazzi's had said was false and misleading, and Morrow and the rest of the Executive Defendants knew that his confirmation of Palazzi's communication was false and misleading. (¶¶ 45–51.)

(For present purposes, I accept, dubiously, the proposition that, when Vogen states what the Executive Defendants knew as a result of Wener's e-mail, Vogen is stating facts or inference fairly to be drawn from facts.)

The Executive Defendants, the pleading continues, failed to convey to Vogen their knowledge that Vogen had received false or misleading information and representations, and their knowledge (presumably drawn from Wener's e-mail) that New River "would be closing operations and had no intention of repaying any loan." (¶¶ 51-55.) Vogen did not know any of this information; the Executive Defendants, by failing to convey this information, intended to mislead Vogen and induce it to enter into the Loan Agreement. (¶¶ 57 – 62.)

### The Allegations in Count II

Count II is new. As noted, it, too, begins with an allegation that New River, through the acts of its agents, the Executive Defendants, fraudulently induced Vogen to enter into the Loan Agreement with New River. (¶ 70.) Beginning at ¶ 71, the pleading contains a litany of things that New River did, or failed to do, culminating in New River's borrowing $2.4 million from Vogen when New River was insolvent and had neither the intention nor the ability to repay the loan. (¶¶ 71–81.)

New River used the proceeds of the Vogen loan, the second amended complaint alleges, to pay off an existing loan to New River that was guaranteed by one or more of the Executive Defendants or by a corporation controlled by one or more of the Executive Defendants. Had New River not received the Vogen loan, the pleading says, New River could not have paid off the existing loan before seeking bankruptcy protection, and one or more of the Executive Defendants would have been personally responsible for repaying that existing loan. (¶¶ 82–84.)

Thus, Vogen asserts — in language of legal conclusion — that:

New River's corporate veil should be pierced in order to hold Wener, Ehrhardt, Morrow, and Cohen liable for New River's fraud. Upon

information and belief, one or more of Wener, Ehrhardt, Morrow, and Cohen used New River to fraudulently obtain a loan from Vogen that allowed them to evade a personal obligation and/or enhance their personal interests, at a time when Wener, Ehrhardt, Morrow, and Cohen knew that New River was effectively insolvent and had no ability nor intention to repay the loan. It would be unjust to adhere to corporate formalities under these circumstances.

*Id.* ¶ 85.

*Analysis*

The question, particularly with regard to Count I, remains what it has been, has Vogen stated facts sufficient to demonstrate that the Executive Defendants owed it a common law duty that arose independently of the Vogen–New River Loan Agreement. *See Kaltman v. All American Pest Control, Inc.*, 281 Va. 483, 706 S.E.2d 864 (2011); *Dunn Constr. Co. v. Cloney*, 278 Va. 260, 268, 683 S.E.2d 943, 947 (2009). The answer is no.

The Supreme Court of Virginia has not yet decided "whether a claim for fraud in the inducement exists when the party engaging in the alleged fraudulent conduct is not a party to the contract fraudulently induced." *Station # 2, L.L.C.*, 280 Va. at 173, n. 4 (quoting *Augusta Mut. Ins. Co. v. Mason*, 274 Va. 199, 206, n. 4, 654 S.E.2d 290, 294, n. 4 (2007)). This is such a claim. However, this court does not have to reach that question in this case, both because Vogen alleges that New River (acting through its agents) was the party engaging in fraudulent conduct, and because Vogen has stated no facts from which the trier of fact could find "breach of some duty imposed by law to protect the broad interests of social policy." *Kamlar Corp. v. Haley*, 224 Va. 699, 706, 299 S.E.2d 514, 517 (1983); *see Augusta Mut. Ins. Co. v. Mason*, 274 Va. 199, 206, 645 S.E.2d 290 (2007).

Vogen's financial loss was occasioned by New River's breach of contract, compounded by New River's bankruptcy filing. The Executive Defendants were not parties to that contract. *See Abi-Najm*, 280 Va. 354-55; *Kamlar*, 224 Va. at 706; *Sensenbrenner v. Rust, Inc.*, 236 Va. 419, 374 S.E.2d 55 (1988).

In Count II, also, Vogen's effort to impose liability upon the Executive Defendants founders on the fact that those individuals were not, according to the pleading, acting on their own behalf; they were the corporation's agents. (¶ 71.) Vogen's complaint is that "New River intended to mislead Vogen with [false] information and fraudulently induce Vogen to enter into the Loan Agreement" (¶ 76), and that "New River's . . . conduct was malicious and engaged in with reckless disregard for Vogen's rights and interests." (¶ 80.)

Further, in Virginia, an action "to pierce the veil of the corporation to impose liability against its shareholders . . . is dependent upon first obtaining a judgment against the corporation." *Dana v. 313 Freemason, A Condo. Ass'n*, 266 Va. 491, 499, 587 S.E.2d 548, 553 (2003). Even if for no other reason than that bankruptcy law forbids it, Vogen has not stated in its pleadings that it has obtained a judgment against New River.

Vogen does not allege that all of the Executive Defendants were shareholders in New River. According to the allegations of ¶¶ 2–11 of the second amended complaint, three of the ten named individual defendants were "owners" of New River.

Vogen does not allege that the existing loan that New River paid was obtained for any purposes other than proper corporate purposes or that that loan was not a legitimate obligation of New River. Vogen also does not allege that the Executive Defendants treated New River as their *alter ego. See O'Hazza v. Executive Credit Corp.*, 246 Va. 111, 117, 421 S.E.2d 318, 321 (1993). Although Vogen alleges that, at the time that the Loan Agreement was signed, New River was "undercapitalized and effectively insolvent" (¶ 80), the Supreme Court of Virginia never has "recognized loaning money to a business that is sustaining losses as a ground for piercing the corporate veil." *Id.*