Opinion by Justice S. BERNARD GOODWYN.
**16 In this appeal, we consider whether the circuit court erred in granting a demurrer to a claim alleging impermissible discrimination in the denial of a request for an extension of a conditional use permit (CUP).
BACKGROUND
EMAC, L.L.C. (EMAC) filed an action for declaratory judgment, damages and attorney's fees against the County of Hanover (the County) and the Board of Supervisors of the County of Hanover (the Board). The action was an appeal and a challenge of the Board's decision to deny EMAC's application for an extension of a CUP. The County and the Board (collectively "defendants") filed a demurrer and motion to dismiss. The circuit court granted the defendants' demurrer and motion to dismiss. EMAC appeals.
Northlake Park is the site of a new mixed use development in Hanover County. Dominion Land and Development Corporation (Dominion Land) and/or Northlake Land Investments, LLC (Northlake) own or owned many of the properties at Northlake Park. According to EMAC, the two entities hold themselves out as being the developer of Northlake Park. In 2013, Craig Realty Group (Craig Realty) expressed interest in developing an outlet mall, designated as the "Outlets at Richmond," in Northlake Park. EMAC alleges in its amended complaint that Craig Realty has convinced County officials and employees that Craig Realty's proposed outlet mall will fulfill the County's goal of having a retail shopping center that generates millions of dollars of revenue for the County. EMAC claims upon information and belief that Dominion Land and Northlake agreed to assist Craig Realty in any way possible so that it could obtain the appropriate County approvals to facilitate development of the outlet mall.
To that end, in May 2012, Dominion Land and Northlake submitted a CUP application in anticipation of Craig Realty **17 purchasing land from them to develop an outlet mall. The "Owner/Applicant" listed on the application was Dominion Land and Northlake. The CUP application was for two destination commerce signs to be located within the Northlake Park development, along Interstate 95 frontage with a minimum separation of 3,000 feet between signs. The signs would permanently state at their top "Outlets at Richmond" and below have an LED screen which could display advertisements on both sides. Describing why the proposed use was desirable and appropriate, the applicants stated, "[t]he requested conditional use for two destination commerce signs is desirable and appropriate for our development located *183 within a destination commerce area as shown on the General Land Use Plan in Hanover County." They stated that the signs were "desired to attract outlet center tenants and other destination retailers to the development by providing highly visible site identification for I-95 traffic not familiar with the area."
One of the proposed signs, the northernmost sign (northern sign), was to be on land owned by Northlake. The other sign (southern sign) was to be on property owned by EMAC. Attached to the application was a non-binding letter of intent signed by the president of Craig Realty and the manager of EMAC that described the terms of a proposed sale from EMAC to Craig Realty of the land on which the southern sign was to be located.
On July 25, 2012, the Board approved CUP-2-12, which allowed the two signs to be constructed on the locations described in the maps attached to the application. The Board imposed several conditions that had to be satisfied before the signs could be built or used. CUP-2-12 required the signs to substantially conform to the appearance of the graphical renditions attached to the application. Moreover, the Board required that the site plan for either sign could not be approved until after the submission and approval of a master sketch plan showing all parcels and the total acreage included in the development. Additionally, construction of the signs could not begin until building permits were issued for the outlet mall, and the signs could not be used to advertise the outlet mall until after the approval of the first framing inspection of the outlet mall. CUP-2-12 stated that it would expire after one year if no substantial construction or change of use had taken place consistent with what CUP-2-12 was approved to accomplish.
**18 On June 4, 2013, Dominion Land requested a one-year extension of CUP-2-12 to prevent the CUP from lapsing before Craig Realty could acquire the building permits for the outlet mall. The Board approved an extension for one year for both signs on July 24, 2013.
While Northlake owned and continues to own the site for the proposed northern sign, EMAC, the owner of McGeorge Rolling Hills RV, a recreational vehicle dealer, was and remains the owner of the site of the proposed southern sign. EMAC and Craig Realty have been unable to agree upon the sale of that property to Craig Realty.
On February 27, 2014, EMAC asked the Board for another extension of CUP-2-12 for the southern sign. On May 8, 2014, Northlake requested an extension of CUP-2-12 for the northern sign. No construction or change of use, consistent with what CUP-2-12 was approved to accomplish, had taken place as of May 2014.
On May 5, 2014, Craig Realty filed a request for a new CUP, CUP-4-14, to relocate the proposed southern sign to the same parcel of property as the outlet mall. The cover letter to the application for CUP-4-14 stated that Northlake had agreed to enter "a perpetual easement agreement" with Craig Realty to give Craig Realty "access, construction, and ongoing maintenance" of the northern sign under CUP-2-12, but that Craig Realty had been unable to purchase the land for the southern sign from EMAC. It said that the application for CUP-4-14 was submitted to allow for building of a southern sign in a different location. The application for CUP-4-14 stated, "[t]he requested relocation of one of the signs will allow the Outlet Center management unfettered access to the sign for its continuous operation, maintenance and use by the OC tenants and business w/in Northlake's Dest. Comm." It added that CUP-4-14 would "allow[ ] management to run tenant's ever changing advertising programs and OC promotions to drive the success of the center."
After the Board approved Northlake's request to extend CUP-2-12 for the northern sign but denied EMAC's request to extend CUP-2-12 for the southern sign, EMAC filed a complaint and later an amended complaint in the Circuit Court of Hanover County against the defendants. EMAC alleged that the Board's refusal to grant EMAC's request for an extension of CUP-2-12 for the **19 southern sign was arbitrary and capricious. It argued that the County had discriminated against it in favor of Northlake, a similarly *184 situated landowner, and that its "decision was not related to the public health, safety, morals, or general welfare." EMAC acknowledged that, unlike Northlake, it did not have an agreement with the outlet mall developer, Craig Realty, for Craig Realty to operate the sign on its property, but it argued that having such an agreement was not a condition of CUP-2-12 or Hanover County's sign ordinance. It asserted that the outlet mall signs were "highly profitable and can generate in excess of four hundred thousand dollars per year." EMAC requested damages of $6,900,000 plus attorney fees, expert witness fees and costs.
EMAC attached several exhibits to its amended complaint that had been made exhibits to the original complaint by a consent order in which the parties agreed to grant a motion craving oyer filed by defendants. The exhibits included CUP-2-12; the application for CUP-2-12 with accompanying documents showing the proposed locations and renditions of the proposed signs; the June 4, 2013 application for an extension of CUP-2-12; and the application and cover letter for CUP-4-14.
Defendants filed a demurrer and motion to dismiss the amended complaint.[1] They argued that the facts alleged in the amended complaint and the information contained in the exhibits showed that the Board's decision to deny EMAC an extension for the southern sign was not arbitrary and capricious and was at least fairly debatable. The defendants asserted that only Northlake and Craig Realty working together could comply with the conditions of CUP-2-12. Defendants claimed that the Board originally approved CUP-2-12 with the intention that the signs would promote the development of Northlake Park and that the outlet mall developer would control the signs.
The circuit court sustained the demurrer and motion to dismiss and issued a letter opinion. Upon consideration of the allegations in the amended complaint and the documents made exhibits pursuant to the joint consent order on defendants' motion craving oyer, the circuit court ruled that EMAC was required to prove that the existing zoning ordinance was unreasonable as applied to its **20 property, and that it failed to allege any facts to satisfy this requirement. It noted that the continued success of the recreational vehicle dealership on EMAC's property showed that the current zoning ordinance was reasonable. Further, the circuit court held that even if EMAC had properly alleged that the current zoning was unreasonable, the record was sufficient to show that the Board's decision denying EMAC's extension request was supported by a rational basis and was fairly debatable. The circuit court ruled that EMAC's compliance with CUP-2-12's conditions was not feasible, and that the conditions necessary for the signs to be constructed would best be satisfied by Northlake and Craig Realty working together. Further, the court noted that EMAC and Craig Realty had developed an adverse relationship that made collaboration between the two unlikely. Finally, the court found that the Board intended for the outlet mall developer to control both signs when it issued CUP-2-12, and that there were potential benefits to Hanover County of having the outlet mall developer control the signs. The court dismissed EMAC's complaint with prejudice.
ANALYSIS
EMAC argues that the circuit court erred when it sustained the demurrer and motion to dismiss based upon the grounds that EMAC did not allege that the existing zoning ordinance was unreasonable without a CUP permitting a destination commerce sign on its property. It also claims that the circuit court erred by applying the fairly debatable standard in a zoning discrimination case. Moreover, it also contends that even if the court rightfully applied the fairly debatable standard, it did not properly interpret the allegations in the amended complaint and the exhibits attached to it, and there were insufficient grounds in the amended complaint and exhibits to establish that the Board's decision was fairly debatable.
We review whether the circuit court properly granted defendants' demurrer de novo.
*185 Squire v. Virginia Hous. Dev. Auth., 287 Va. 507, 514, 758 S.E.2d 55, 59 (2014). When ruling on a demurrer, a trial court accepts all facts properly pled and any reasonable inferences from those facts as true and decides whether the allegations present a valid cause of action. Id.
**21 We have held that documents brought into a case as a result of a motion craving oyer are incorporated into the pleadings and may be used to " amplif[y]" the facts alleged in a complaint when a court decides whether to sustain or overrule a demurrer. Dodge v. Trustees of Randolph-Macon Woman's College, 276 Va. 1, 5, 661 S.E.2d 801, 803 (2008) ; Ward's Equip. v. New Holland N. Am., 254 Va. 379, 382, 493 S.E.2d 516, 518 (1997) ; Jarrett v. Jarrett, 34 Va. (7 Leigh) 93, 97 (1836); Wood v. Commonwealth, 25 Va. (4 Rand.) 329, 330 (1826); see also Kent Sinclair & Leigh B. Middleditch, Jr., Virginia Civil Procedure § 9.6, at 739-40 (6th ed. 2014). Furthermore, "a court considering a demurrer may ignore a party's factual allegations contradicted by the terms of authentic, unambiguous documents that properly are a part of the pleadings." Schaecher v. Bouffault, 290 Va. 83, 107, 772 S.E.2d 589, 602 (2015) ; Ward's Equip., 254 Va. at 382-83, 493 S.E.2d at 518.
Here, the parties entered a consent order granting oyer and the circuit court properly considered the documents that were added as exhibits pursuant to the grant of oyer.[2] Thus, in ruling upon defendants' demurrer and motion to dismiss, the court was able to consider not only the allegations in the amended complaint, but also the application for CUP-2-12 with accompanying maps showing the proposed locations for the signs and renditions of the proposed signs, the letter acknowledging the Board's approval of CUP-2-12 and providing the conditions of that approval, the June 4, 2013 application for an extension of CUP-2-12, and the application and cover letter for CUP-4-14.
The decision of a locality on a CUP is presumed valid and will not be altered by a court absent "clear proof that the action is unreasonable, arbitrary, and bears no reasonable relation to the public health, safety, morals, or general welfare." City Council of Virginia Beach v. Harrell, 236 Va. 99, 101-02, 372 S.E.2d 139, 141 (1988) ; City of Richmond v. Randall, 215 Va. 506, 511, 211 S.E.2d 56, 60 (1975) (noting that the standards of judicial review for zoning enactments also apply to decisions on an application for a **22 CUP). If a challenging party presents probative evidence of unreasonableness, the locality must present sufficient evidence to show that the reasonableness of the decision is "fairly debatable" in order to have the locality's decision upheld in court. Harrell, 236 Va. at 102, 372 S.E.2d at 141 (citation and internal quotation marks omitted). "An issue is said to be fairly debatable when the evidence offered in support of the opposing views would lead objective and reasonable persons to reach different conclusions." Board of Supervisors v. McDonald's Corp., 261 Va. 583, 590, 544 S.E.2d 334, 339 (2001) (citation and internal quotation marks omitted).
Relying on our decisions in Harrell, 236 Va. at 102, 372 S.E.2d at 141, and Board of Supervisors v. International Funeral Services, Inc., 221 Va. 840, 275 S.E.2d 586 (1981), the circuit court held that a landowner challenging the denial of a CUP must prove that the denial was unreasonable by showing not only that the requested use is reasonable, but also that the existing zoning ordinance is unreasonable as applied to his, her, or its land. The circuit court thus found that because EMAC did not allege that the existing ordinance was unreasonable as to its property, it did not make a valid claim. EMAC argues that the circuit court erred in applying that standard in this instance, because EMAC alleges impermissible discrimination as the basis for the Board's decision not to grant EMAC's request to extend the CUP. We agree with EMAC concerning this assignment of error.
*186 EMAC's amended complaint alleged that the Board discriminated against it by rejecting its application for an extension of CUP-2-12 for the southern sign while granting Northlake's extension request of CUP-2-12 for the northern sign. An impermissibly discriminatory decision is unreasonable regardless of whether the existing zoning ordinance is reasonable as applied to an applicant's land. McDonald's, 261 Va. at 591, 544 S.E.2d at 339. In order to allege a valid claim for impermissible discrimination, the contesting party must show that the requested use granted to one landowner was rejected as to "another similarly situated." Id. (citation and internal quotation marks omitted). If a landowner makes such a showing, the locality has the burden to prove that there was a rational basis justifying the allegedly discriminatory action, thereby establishing that the decision was fairly debatable. Id. Thus, if a landowner alleges that a zoning decision impermissibly **23 discriminated against it, it has implicitly alleged that the decision was unreasonable. Therefore, the court erred in finding that EMAC was required to allege that the existing zoning ordinance was unreasonable as applied to its land in order to state a cause of action, and in granting defendants' demurrer and motion to dismiss on that basis.
However, as an alternative basis for its decision to grant defendants' demurrer, the circuit court stated that the amended complaint and exhibits demonstrated that the decision to deny EMAC's extension request was supported by a rational basis and was fairly debatable. EMAC claims that the circuit court erred in sustaining the demurrer on this ground as well. EMAC's amended complaint states that the Board's decision to deny the extension of CUP-2-12 for the southern sign was arbitrary and capricious and was impermissibly discriminatory because EMAC and Northlake were similarly situated but treated differently. However, an examination of the amended complaint and its exhibits, read in the light most favorable to the plaintiff, shows that Northlake and EMAC are not similarly situated parties, and that the circuit court did not err in concluding that the County's decision concerning the extension of the CUP was fairly debatable and supported by a rational basis.
The record before the circuit court on demurrer included EMAC's lengthy amended complaint and exhibits, including the exhibits that were the subject of the joint consent order on defendants' motion craving oyer, which included materials that the Board considered when it denied EMAC's extension application. The circuit court properly relied upon this extensive record to conclude that the Board's decision was fairly debatable, and that EMAC had failed to allege facts upon which it could prevail in its challenge of the Board's zoning decision. It was, therefore, proper for the circuit court to sustain the defendants' demurrer and motion to dismiss.
First, EMAC and Northlake are not similarly situated because Northlake was an applicant for CUP-2-12 and EMAC was not. Hanover County Code § 26-322(a) states that an application for a CUP "may be made by any property owner, attorney-in-fact of the owner, or tenant." Moreover, Hanover County Code § 26-322(b) states, "An application for a conditional use permit shall include **24 written permission from the owner of the subject property granting right of entry to the zoning administrator and to agents of the County and law enforcement agencies, for inspection purposes, during the term of any permit which may be issued." While Northlake, the owner of the land designated for the northern sign, was listed as an applicant on the application for CUP-2-12 and it gave County representatives permission to enter its land to inspect upon request, neither EMAC, the owner of the land designated for the southern sign at the time of the application for CUP-2-12, nor its attorney-in-fact or tenant was an applicant, and EMAC gave no such permission. Therefore, while CUP-2-12 was valid as to the northern sign, it was void ab initio as to the southern sign.[3] Concerned *187 Taxpayers v. County of Brunswick, 249 Va. 320, 325, 455 S.E.2d 712, 714-15 (1995) (holding that the circuit court erred by granting a demurrer on a third party challenge to a CUP when the third party alleged that the locality wrongfully granted a CUP to a party that did not own or have a contract to buy the land subject to the CUP in violation of the local zoning ordinance); Hurt v. Caldwell, 222 Va. 91, 97-98, 279 S.E.2d 138, 142 (1981) (holding that a building permit issued that did not comply with the requirements of a local ordinance "was void and of no effect"). Thus, the parties were not similarly situated because Northlake was seeking an extension for a valid portion of CUP-2-12 while EMAC was seeking an extension for a void ab initio portion of CUP-2-12. The reasonableness of the Board's decision not to grant EMAC an **25 extension is fairly debatable, and as a result, the circuit court did not err in granting the defendants' demurrer and motion to dismiss.
Further, the application and grant of CUP-2-12 was at all times subject to the provisions of Hanover County Code § 26-327 governing the duration of CUPs, which state that such permits are void one year after the date of approval "unless substantial construction or use" has been initiated. The Board declined to grant EMAC additional time. Hanover County Code § 26-327(b)(3) states that an extension of a CUP is only allowed if "approval of additional time is consistent with the public interest." EMAC complains that it was not given an extension while Northlake was. However, Northlake and EMAC were not similarly situated with regard to whether granting them additional time was consistent with the public interest.
In its amended complaint, EMAC asserts that the County is convinced that the proposed Outlets at Richmond will fulfill the County's goal of having an outlet mall that generates millions of dollars of revenue for the County. It also agrees that Northlake, the developer of Northlake Park, applied for CUP-2-12 to assist Craig Realty, the developer of the outlet mall that was to be located within the park. The CUP allows for the construction of two destination commerce signs that will advertise the outlet mall. The CUP application contemplated that EMAC would sell the location for the southern sign to the outlet mall developer. The County imposed conditions regarding the development of the outlet mall as a prerequisite to constructing the signs. Pursuant to the terms of the CUP, an outlet mall must be developed prior to the signs being allowed.
Northlake has an agreement with the outlet mall developer concerning the operation of the northern sign on its property, and there is no controversy concerning whether extension of that CUP is consistent with the public interest of developing the outlet mall and constructing the sign. However, there is no such agreement between EMAC and Craig Realty for the southern sign. Moreover, as noted by the circuit court, allegations in the amended complaint evidence an adverse relationship between EMAC and the outlet mall developer. Additionally, the outlet mall developer has requested that the southern sign, required by the CUP to advertise the outlet mall, be moved to a different location controlled by it.
**26 EMAC provides no argument as to why granting it an extension would be consistent with the public interest. EMAC is unaffiliated with the development of the outlet mall, which is a prerequisite for the signs to be constructed.
*188 Thus, it is reasonably debatable as to whether it would be consistent with the public interest to give EMAC additional time to fulfill the requirements of the CUP.
It was rational, fairly debatable and consistent with the public interest to allow the CUP for the sign on EMAC's property to lapse so that the Board can evaluate the appropriate placement of the southern sign consistent with the public interest.
CONCLUSION
For the reasons stated, we affirm the judgment of the circuit court, and hold that it did not err in granting defendants' demurrer and motion to dismiss.
Affirmed.

The County previously filed a demurrer and motion to dismiss the original complaint.

The exhibits were added to the record as a result of a motion craving oyer regarding the original complaint. When EMAC was granted leave to file an amended complaint adding two additional counts to the complaint, the exhibits were attached to the amended complaint and considered by the circuit court without objection as having been added and incorporated into the amended complaint as the result of the consent order granting oyer.

When part of a legislative enactment is void ab initio but the other part is not, the valid portions of the enactment are usually preserved and the entire enactment is not rendered void, in accord with Code § 1-243 ("The provisions of acts of the General Assembly or the application thereof to any person or circumstances that are held invalid shall not affect the validity of other acts, provisions, or applications that can be given effect without the invalid provisions or applications. The provisions of all acts, except for the title of the act, are severable unless (i) the act specifically provides that its provisions are not severable; or (ii) it is apparent that two or more acts or provisions must operate in accord with one another."); Hanover County Code § 1-4 ("If any part, section, subsection, sentence, clause or phrase of this Code is, for any reason, declared to be unconstitutional or invalid, such decision shall not affect the validity of the remaining portions of this Code."); Toghill v. Commonwealth, 289 Va. 220, 227-28, 232-35, 768 S.E.2d 674, 678, 680-82 (2015) (discussing and applying the Court's preference for invalidating only unconstitutional applications of a statute instead of facially invalidating the statute).
Given that CUP-2-12 allows for two discrete signs and that the Board's goal with CUP-212 was to allow for signage for the proposed outlet mall, it is our judgment that the Board would have preferred having one sign be valid instead of having both signs be rendered invalid. Thus, the portion of CUP-2-12 allowing for the northern sign is not void ab initio even though CUP-212 was void ab initio regarding the southern sign.