Present: Lemons, C.J., Goodwyn, Mims, Kelsey, McCullough and Chafin, JJ., and Koontz, S.J.

KATHLYN ROWLAND, ET AL.

OPINION BY
v. Record No. 190580     SENIOR JUSTICE LAWRENCE L. KOONTZ, JR.
May 28, 2020

TOWN COUNCIL OF WARRENTON, ET AL.

FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
Jeffrey W. Parker, Judge

In this appeal, the primary issue we consider is whether a local government may

accept a conditional proffer from a property owner as part of a rezoning application that alters

a minimum mixed-use requirement of a zoning district below that specified in the local

zoning ordinance.

BACKGROUND

On April 15, 2016, ten property owners filed an application with the Warrenton

Planning Commission ("planning commission") to rezone approximately 31 acres of land

within the Town of Warrenton from industrial to industrial planned unit development

("I-PUD"), a type of mixed use development allowing for limited residential and commercial

properties in the zone along with industrial uses.[1]  The proposal was designated as the

"Walker Drive Project" in reference to the main road bordering the western boundary of the

property.  The property was bordered to its east by Eastern Bypass (U.S. Highways 15/17/29),

---

[1] When this matter subsequently came before the circuit court, only four of the
property owners – Eastside Investment Group, LLC, Walker Drive Investment Group, LLC,
Remland, LLC, and Springfield Real Properties, LLC – were made parties to the action and
subsequently to this appeal.  We will refer to these parties collectively as "the developers."
The other six property owners' inclusion in the rezoning application was as joint owners of a
preexisting building within the area to be rezoned.  As they had no present intent to redevelop
the property under the proposed rezoning, they were not parties to the proffers accepted by the
Town that are the subject of this appeal and took no substantial part in the proceedings before
the planning commission or the town council.

and on its north and south by Academy Hill Road and East Lee Street respectively. *See* Exhibit 1: Aerial View of Walker Drive Project Area. Revisions to the application were submitted on December 5, 2016 and February 1, 2017 following work sessions with planning commission staff.

The planning commission conducted a public hearing on the developers' application on February 21, 2017. Residents spoke for and against the proposed development during the hearing. The planning commission voted 6–1 to recommend that the Town Council of Warrenton ("town council") deny the rezoning because, as stated in the minutes, "the project is not clear, [there are] too many unanswered questions, [as well as] concerns about the sewer needs, and there is no reason to change the zoning from Industrial."

Based upon the concerns stated at the February 21, 2017 hearing by the members of the public and planning commission, the developers made additional adjustments to the application in consultation with town staff. The final revised proffer statement and master plan were submitted on May 19, 2017. The proffer statement included mixed land use percentages which did not comport with the target of the town's zoning ordinance percentages of 50% minimum industrial, 30% maximum commercial, and 5 to 35% for residential uses in an I-PUD. Town of Warrenton Zoning Ordinance ("WZO") § 3-5.2.4.1.

The town council held a public hearing on the rezoning application on July 11, 2017. A memo to the town council prepared by town staff summarized the history of the proposal to date and contained a table confirming the proffered land use mix of 39.32% minimum industrial, 25.19% maximum commercial, and 35.49% residential. Despite having significantly less than the 50% minimum industrial use required by WZO § 3-5.2.4.1, town staff opined that the land use mix deviations from the requirements of the zoning ordinance

2

were nonetheless "consistent with the intent of both the I-PUD District and [the town's] Comprehensive [Zoning] Plan." The memo noted that since the planning commission's denial recommendation, the developers had "worked to address [the planning commission's] concerns" and the "final submission is a large step forward from what was presented to the planning commission in February." The memo recommended approval of the rezoning, provided the town council "work[ed] with the [developers] on the few outstanding remaining issues."

In addition to written comments submitted prior to the meeting, the town council heard testimony from the town staff and from citizens both in favor and against approving the proposal. Council members debated the proposal before voting. The vice-mayor specifically observed that had she been "on the Planning Commission at the time this came through, I probably would have voted against it. But the changes that our Planning Department and the influence that Council has suggested that we put into this proffer statement[] has changed [the proposal] drastically," noting her belief that the planning commission would have voted differently on the revised application before the town council. The town council approved the rezoning by a 6–1 vote.

On August 10, 2017, Elbert Michael and Elizabeth S. Ussery, Craig Updyke, Lee T. and Kathlyn Rowland, and Carol Hegwood (collectively, "the residents"),[2] all citizens of the Town of Warrenton whose residential properties were located near the Walker Drive Project, jointly filed a complaint, subsequently amended twice by leave of the court, in the Circuit

---

[2] Warren T. Semple, who was the original lead plaintiff in this case, did not join in this appeal. Accordingly, while the case was styled as *Warren T. Semple, et al. v. Town Council of the Town of Warrenton, Virginia, et al.* in the circuit court, we have substituted Kathlyn Rowland as lead appellant for the style of the case in this Court.

Court of Fauquier County ("circuit court") challenging the town council's approval of the rezoning. Specifically, the complaint challenged the acceptance of the proffer that permitted a nonconforming balance between the land use percentages required by WZO § 3-5.2.4.1 and other alleged violations of the zoning ordinance. After sustaining the initial demurrer to the complaint by the town council and granting the residents leave to amend, the circuit court permitted the town council to join the developers as defendants in the action.

The case was ultimately decided by the circuit court following the court's granting of a motion craving oyer of the legislative record of the proceedings before the planning commission and the town council. Prior to the court's final ruling, the parties agreed that there were no material facts in dispute and the circuit court noted that a hearing with witnesses would not "materially amplify or expand on the written documentation already submitted." Moreover, the issues presented in this appeal are subject to well established standards of review that the application of statutes and ordinances will be reviewed de novo, while the legislative act of a local government with respect to zoning is reviewed under a "fairly debatable" standard. *Renkey v. County Bd. of Arlington Cty.*, 272 Va. 369, 373 (2006) (de novo standard for interpretation of zoning ordinances); *id*. at 376 (fairly debatable standard for review of legislative acts). Accordingly, we will limit our summary of

4

the remainder of the proceedings to the specific rulings of the trial court relevant to those issues, which were presented in the first amended complaint as counts I, II, V, and VIII.[3]

Counts I and II challenge the authority of the town council to review and vote on the revised rezoning application without further review by the planning commission. The residents maintained that WZO § 3-5.2.4.3.5 requires the town council to act only upon a recommendation of the planning commission. Because the developers made extensive changes to the application after the planning commission voted to recommend that it be rejected, the residents contend that the town council's action was void because the planning commission had not reviewed and made a recommendation on the revised application. The circuit court dismissed counts I and II finding that the relevant ordinance and its authorizing statute, Code § 15.2-2210, permit continued negotiations between a rezoning applicant and the locality following a review by the planning commission, which functions only in an advisory capacity.

Count V relates to whether the town council was authorized to accept the conditional proffers which modified the requirements of the I-PUD zone. As explained more fully in the subsequent discussion of this issue, the residents maintained that proffers could not be used to reduce the limitations placed on the zone, but only to place further limitations on use. The circuit court, relying on Code § 15.2-2201 and WZO § 11-3.9.17.1, found that the town

---

[3] The circuit court permitted the residents to file a second amended complaint limited to certain issues that were not dismissed with prejudice after the court's review of the first amended complaint. Only count V of the first amended complaint was restated, as count IX, in the second amended complaint, with the residents preserving their right to appeal the dismissal of counts I, II, and VIII of the first amended complaint through incorporation by reference. To avoid confusion, we will refer to each issue by its designation in the first amended complaint.

council was permitted to accept proffers as a "modification" of the zoning ordinance, not merely those that were "in addition to" the requirements of the zoning ordinance.

Count VIII relates to the requirement of WZO § 3-5.2.4.3.2 that an application for rezoning must include a "Master Plan" showing an industrial planned unit development as an integrated, cohesive entity. The residents contended that the master plan presented by the developers lacked the necessary specificity to satisfy the requirements of the ordinance. In dismissing count VIII, the circuit court reasoned that "[i]t is not up to the Court or the [residents] to micromanage the Town Council as to what should or should not be contained in the Master Plan which is a 'guide' to development, unless it has a direct impact upon the [residents]." Because the residents had not alleged a direct impact, the court concluded that they lacked standing to raise this issue.

The circuit court entered an order of final judgment in favor of the town council and the developers on February 5, 2019. We granted the residents an appeal limited to the following assignments of error:

> 1. The Circuit Court erred by sustaining the demurrers to Count IX of the Amended Complaint and Count V of the Second Amended Complaint.
>
>> a. Although Virginia Code §§ 15.2-2297 and 15.2-2298 (and Warrenton Zoning Ordinance § 11-3.9.17.2) allow for proffered conditions "in addition to" the requirements of an applicable zoning district, the Circuit Court allowed the town council to accept proffered conditions that modified or reduced the requirements of the applicable zoning district.
>>
>> b. The Circuit Court read the general definition in Virginia Code § 15.2-2201 to control the specific requirements for conditional rezoning set out in Virginia Code §§ 15.2-2297 and 15.2-2298, in violation of settled rules of statutory interpretation.
>
> 3. The Circuit Court erred in sustaining the demurrers to Counts I and II of the Amended Complaint. Warrenton Ordinance § 3-5.2.4.3.5 allows the town council to accept waivers and modifications to the PUD Development Standards at Warrenton Ordinance § 3-5.2.4.1 only upon recommendation by the Planning Commission. Here, the waivers and modifications at issue were

6

also never presented to the Planning Commission, so the Planning Commission could not have made a recommendation.

4. The Circuit Court erred in sustaining the demurrers to Count VIII of the Amended Complaint. A criterion provided in Warrenton Ordinance § 3-5.2.4.3.2 requires that the Master Plan show an industrial planned unit development as an integrated, cohesive entity. The Council approved a master plan that did not show this. The Court determined that the Homeowners had not demonstrated a direct impact from this violation. The Homeowners were not required to demonstrate such impact.

## DISCUSSION

As was stated at the outset, the principal issue of this appeal is whether the town council had the authority to accept a proffer from the developers which resulted in the creation of a I-PUD which has a lower threshold for industrial land use than other properties under the I-PUD zoning designation. It is a matter of settled law in this Commonwealth that "[l]ocalities have no element of sovereignty and are agencies created by the Commonwealth. When a statute enacted by the General Assembly conflicts with an ordinance enacted by a local governing body, the statute must prevail." *Sinclair v. New Cingular Wireless PCS, LLC*, 283 Va. 567, 576 (2012). Accordingly, we look to the language used by the General Assembly in the relevant Code sections to determine whether the local ordinances adopted and relied upon by the town council to permit the conditional rezoning comport with the authority granted to the town by statute.

In the present case, by accepting the developers' proffer that set the ratio of industrial uses in the I-PUD to less than the minimum required by WZO § 3-5.2.4.1, the town council effectively rezoned the Walker Drive Project property as an I-PUD which could have a

7

greater proportion of commercial and residential uses than other I-PUDs.[4] The residents maintain, as they did in the circuit court, that the town council's reliance on WZO § 11-3.9.17.1 as providing it the authority to accept the proffer is misplaced because the ordinance is in conflict with Code §§ 15.2-2297 and 15.2-2298 pertaining to the powers of local governments with respect to accepting conditional proffers made in an application for rezoning. The town council and the developers, along with amicus curiae Local Government Attorneys of Virginia, Inc.,[5] respond that the circuit court correctly interpreted the language of the ordinance to be in accord with the authorizing statutes and the definitional section of Chapter 22, Article 7, of Title 15.2 found at Code § 15.2-2201.

As relevant to this appeal, WZO § 11-3.9.17 provides:

1. Purpose and Authority

As part of a petition to rezone property and amend the official zoning map, the property owner may voluntarily proffer in writing certain conditions and restrictions on the use and development of his property, *such conditions being in addition to, or modification of*, the regulations provided for a particular zone or zoning district by this Ordinance. . . .

2. Proffered Conditions

As a part of an application for rezoning or amendment to the zoning district map, the owner or owners of the property involved may, prior to a public hearing before the town council, voluntarily proffer in writing such reasonable conditions*, in addition to* the regulations provided for the zoning district or districts as herein set forth, as he deems appropriate for the particular case to address impacts of the proposed use.

(Emphasis added.)

---

[4] The proffer also permitted a de minimis departure from the maximum allowed residential use within the I-PUD. We focus our analysis to the reduction of the industrial use below the minimum, however, because its stands to reason that if the locality had authority to accept a proffer which included a significant departure from the requirements for the zone, it would necessarily have the authority to accept a proffer creating a de minimis departure.

[5] The amicus filed a motion to appear in support of the appellees limited to the issue raised in assignment of error one. By an order dated February 6, 2020, this Court granted leave for the amicus to file a brief in support thereof.

Code § 15.2-2201, in relevant part, provides:

"Conditional zoning" means, as part of classifying land within a locality into areas and districts by legislative action, the allowing of reasonable conditions governing the use of such property, *such conditions being in addition to, or modification of* the regulations provided for a particular zoning district or zone by the overall zoning ordinance.

(Emphasis added.)

Code § 15.2-2297, in relevant part, provides:

A. A zoning ordinance may include and provide for the voluntary proffering in writing, by the owner, of reasonable conditions, prior to a public hearing before the governing body, *in addition to* the regulations provided for the zoning district or zone by the ordinance, as a part of a rezoning . . . . Once proffered and accepted as part of an amendment to the zoning ordinance, the conditions shall continue in effect until a subsequent amendment changes the zoning on the property covered by the conditions.

(Emphasis added.)

Code § 15.2-2298, in relevant part, provides:

In any such locality, notwithstanding any contrary provisions of § 15.2-2297, a zoning ordinance may include and provide for the voluntary proffering in writing, by the owner, of reasonable conditions, prior to a public hearing before the governing body, *in addition to* the regulations provided for the zoning district or zone by the ordinance, as a part of a rezoning or amendment to a zoning map . . . .

(Emphasis added.)

The obvious distinction between the several phrases emphasized in the statutes and the ordinance is that some use only "in addition to" to describe the ability of a landowner to make, and the locality to accept, a proffer that creates conditions for the property different from that found in the description of the zone in the zoning ordinance, while the others permit proffers "in addition to, or modification of" the conditions of the zoning ordinance. In the circuit court, and in this appeal, the parties have primarily focused their arguments on how these terms are to be construed and whether the language of the definitional section, which was adopted by the town in WZO § 11-3.9.17.1, or the language in Code §§ 15.2-2297 and

9

15.2-2298 as adopted by the town in WZO § 11-3.9.17.2, is controlling with respect to conditional proffers of the rezoning application in this case.

The residents contend that the circuit court erred in referencing the definitional section of Chapter 22, Article 7, of Title 15.2 to interpret Code §§ 15.2-2297 and 15.2-2298 because those code sections are unambiguous and may be read precisely as written. That is, they maintain that because each statute uses only the "in addition to" language without including the "or modification of" language of Code § 15.2-2201, the General Assembly must necessarily have intended for the proffers made pursuant to those code sections to be limited to additional *restrictions* on land use, not *modifications* of land use. In doing so, the residents rely upon the rule of statutory construction that where one statute speaks to a subject in general terms, while another does so specifically, the latter will prevail over the former. *Barr v. Town & Country Props., Inc.*, 240 Va. 292, 294-95 (1990). They maintain that the definitional section, and by extension the adoption of its language in WZO § 11-3.9.17.1, is clearly a statute of general application, while the more restrictive language of Code §§ 15.2-2297 and 15.2-2298, and the adoption of identical language in WZO § 11-3.9.17.2, are specific to conditional proffers in rezoning applications.

The town council, the developers, and the amicus respond that by focusing on the language of Code §§ 15.2-2297 and 15.2-2298 to the exclusion of the rest of the statutes addressing conditional proffers and rezoning, the residents are not following a cardinal rule of statutory construction to harmonize disparate statutes to avoid conflicts before applying the rule that a statute that speaks in a specific way will trump one that speaks only generally. *Gas Mart Corp. v. Board of Sup'rs of Loudoun Cty.*, 269 Va. 334, 350 (2005). In support of this position, they note that Code § 15.2-2296 provides in relevant part that:

10

It is the purpose of §§ 15.2-2296 through 15.2-2300 to provide a more flexible and adaptable zoning method to cope with situations found in such zones through conditional zoning, whereby a zoning reclassification may be allowed subject to certain conditions proffered by the zoning applicant for the protection of the community that are not generally applicable to land similarly zoned.

While we agree with the result reached by the circuit court, we do not find it necessary to incorporate language from Code § 15.2-2201 into Code §§ 15.2-2297 and 15.2-2298 to reach that result. Rather, we find that the language of the statutes, without more, is sufficient to establish that the General Assembly intended for local governments to have authority to accept proffers that depart from the requirements of the zoning ordinance for a specific property as part of a conditional rezoning process. In effect, we agree with the residents that we can rely on the plain meaning of the language used by the legislature, but we disagree with the residents' asserted meaning of that language.

In 1978, the General Assembly formally authorized certain local governments to accept voluntary proffers made by landowners requesting special consideration from the locality to allow a particular use of property. *See* 1978 Acts ch. 320 (enacting former Code §§ 15.1–491.1 and 15.1–491.2, subsequently incorporated into current Code §§ 15.2–2296 and 15.2–2297). Proffers are voluntary commitments made by landowners in order to facilitate approval of conditional zoning and rezoning requests by ameliorating the impact of development of their property on the local infrastructure and the character and environment of adjoining land. *See* [E.A.] Prichard & [Gregory A.] Riegle, [*Searching For Certainty: Virginia's Evolutionary Approach To Vested Rights*,] 7 Geo. Mason L.Rev. [983,] 988 [(1999)]. *In Virginia, proffers, once accepted, have the force of law equal to the requirements of the zoning ordinance. Id.; see* Code §§ 15.2–2297(A) and 15.2–2303(A).

*Hale v. Board of Zoning Appeals*, 277 Va. 250, 273 (2009) (emphasis added).

Because the acceptance of proffers by a locality has the force of law, the acceptance of a proffer which alters the rezoning requirements of a particular property is the functional equivalent of an amendment to the zoning ordinance. This intent by the General Assembly is clearly stated in Code § 15.2-2296 which provides that the proffers "are not generally applicable to land similarly zoned." Moreover, express language in Code §§ 15.2-2297 and

11

15.2-2298 makes clear that such proffers are "accepted as part of an amendment to the zoning ordinance" or "as a part of a rezoning or amendment to a zoning map." Accordingly, we conclude that the General Assembly intended for these statutes to grant localities the authority to permit deviations from the requirements of a zoning ordinance by accepting voluntary proffers as part of a rezoning application.

Reading Code §§ 15.2-2297 and 15.2-2298 in pari materia with Code § 15.2-2296, it becomes clear that the residents' construction of "in addition to" is far too narrow and constrained. The construction that "in addition to" means that the proffers must not alter the requirements of the particular zone simply does not follow from the clearly stated purpose of proffers for rezoning as set out in Code § 15.2-2296 to "provide a more flexible and adaptable zoning method . . . for the protection of the community." Rather, we are of opinion that "in addition to" means that the zoning applicant may make, or the locality may suggest, *any* proffer which can be viewed as beneficial to the community, even if that proffer creates a condition "not generally applicable to land similarly zoned."

It is axiomatic that merely because an applicant makes a proffer, the locality is not bound to accept it. Rather, it is the function of the zoning authority of the locality to review the application as a whole and determine whether, on balance, any given proffer is reasonable and for the benefit of the community. We have long recognized that because the decision of a zoning authority is legislative in nature, a reviewing court should not be concerned with whether the decision was right or wrong. *Board of County Supervisors v. Davis*, 200 Va. 316, 322 (1958). Rather, legislative decisions in zoning matters are "presumed valid and will not be altered by a court absent clear proof that the action is unreasonable, arbitrary, [or] bears no

reasonable relation to the public health, safety, morals, or general welfare." *EMAC, LLC v. County of Hanover*, 291 Va. 13, 21 (2016) (internal quotation marks omitted).

If a party challenging a rezoning decision presents evidence of its unreasonableness, the locality must present sufficient evidence to show the decision was "fairly debatable" in order to have the decision upheld in court. An issue is said to be fairly debatable when the evidence offered in support of the opposing views would lead objective and reasonable persons to reach different conclusions. *Id.* at 22. Accordingly, the issue before the circuit court was whether the town council's acceptance of the proffer reducing the maximum industrial use of the rezoned property in the Walker Drive Project was "fairly debatable" in relation to the public health, safety, morals, or general welfare, nor was it unreasonable or arbitrary, and thus was a permissible use of conditional zoning.

On its face, the proffer does not appear to be inconsistent with the intended mixed-use development of an I-PUD. The proffer in this instance reduced the minimum industrial use for the property from 50% to approximately 40% and spread the 10% difference between the commercial and residential uses, resulting only in a de minimis increase in the maximum residential use and a commercial use that was within the allowed range for the I-PUD. The residents alleged that the proffer's downward departure from the minimum industrial use of the I-PUD would be detrimental to the neighboring properties because it would increase the burden of traffic on Walker Road. However, the application also included proffers for improvements to the traffic flow through and around the project and the record shows that the developers worked with the town to address issues of traffic and other burdens which were among the concerns raised when the matter was before the planning commission. On balance, we cannot say that the residents' expressed concerns would have been sufficient to overcome

13

the presumption of legislative correctness on an issue that was fairly debatable. For these reasons, we hold that the circuit court did not err in sustaining the demurrer to count V of the amended complaint.

The residents next contend that the changes to the developer's original application made after it was considered by the planning commission could not be considered by the town council because the revised application should have first been referred back to the planning commission under WZO § 3-5.2.4.3.5. We disagree.

WZO § 3-5.2.4.3.5 provides:

The Town Council shall, upon recommendation of the planning commission, have the authority to modify (making the criteria more, less or equally restrictive) or waive, the criteria established [in] §[]3-5.2 et seq. for Commercial or Industrial Planned Unit Development, if in the opinion of Town Council it shall determine that such modification or waiver:

a. Shall advance the legislative intent and general planning considerations underlying the PUD and this Ordinance,

b. Shall be in general conformity with the adopted Comprehensive Plan, and

c. Shall not create an adverse effect on adjacent land uses.

Under the residents' construction of this ordinance, the town council would not be permitted to accept any application for a rezoning to an I-PUD without a "recommendation of the planning commission" on the final version of the application. The ordinance, however, does not have this requirement, nor would such a requirement be consistent with the advisory role of the planning commission. To find that every change resulting from continued negotiations between a developer and a locality requires an additional planning commission hearing would mean that "the public hearing process may never come to a conclusion." *Arogas, Inc. v. Frederick Cty. Bd. of Zoning Appeals*, 280 Va. 221, 227 (2010).

The record shows that the revised application before the town council was substantially the same as the original application reviewed by the planning commission, with

14

the amendments having been adopted for the express purpose of addressing the concerns raised during the review by that body. The town council was fully apprised of the concerns of the planning commission and was satisfied that the efforts by the developers working in conjunction with the town staff were adequate to address those concerns which were the "recommendation[s] of the planning commission" required by the ordinance. Accordingly, we hold that the circuit court did not err in sustaining the demurrer to counts I and II of the amended complaint.

Finally, we consider the residents' assertion that the requirement of WZO § 3-5.2.4.3 that the developers' master plan show its intended use of the I-PUD "as an integrated, cohesive entity" was not met by the developers' revised application. We agree with the circuit court that determining the sufficiency of the application, including that its master plan was adequate to the requirements of the zoning ordinance, is a legislative function of the town council subject to the fairly debatable standard and that the residents' allegations as to insufficiency of the master plan were not sufficient to overcome the presumption that the legislative action of the town council was correct.[6] We therefore hold that the circuit court did not err in sustaining the demurrer to count VIII of the amended complaint.

CONCLUSION

For these reasons, we will affirm the judgment of the circuit court upholding the approval of the developers' conditional zoning application by the town council.

*Affirmed*.

---

[6] Because the town council's decision to accept the master plan can be sustained as fairly debatable, we need not consider whether the residents were required to allege a particularized harm relating to the master plan in order to challenge the reasonableness of the decision.

15



Exhibit 1: Aerial View of Walker Drive Project Area [App. 49.]

16