COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Friedman and Callins
Argued at Leesburg, Virginia


LINDA HEATH

v.          Record No. 1276-22-2

THE ESTATE OF LOUISE T. HEATH, DECEASED

MEMORANDUM OPINION* BY
JUDGE DOMINIQUE A. CALLINS
APRIL 23, 2024

FROM THE CIRCUIT COURT OF HANOVER COUNTY
J. Overton Harris, Judge

Harrison J. Clinton (Blake W. Frieman; Bean, Kinney & Korman,
P.C., on brief), for appellant.

No brief or argument for appellee.


Linda Heath appeals an order of the circuit court sustaining the demurrer of the Estate of

Louise T. Heath (the "Estate") to her claim for adverse possession. On appeal, Linda assigns error

to the circuit court finding that she possessed certain property under the mistaken belief she had a

life estate in the property.

BACKGROUND[1]

Louise T. Heath had seven children, six of whom were male (collectively, the "Heath

Brothers"). Linda, Louise's only daughter, lived with and cared for her mother at her mother's

home in Hanover County (the "Property") until Louise died in June 1988. Louise's last will and

testament named her children as her heirs, and two of the Heath Brothers as executors of the Estate.

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] "The [circuit] court decided this case on a demurrer, and, therefore, we shall recite the facts in accordance with well-established principles that a demurrer admits the truth of all material facts that are properly pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred from alleged facts." *P.M. Palumbo, Jr., M.D., Inc. v. Bennett*, 242 Va. 248, 249 (1991).

After her mother's death, Linda continued to reside at the Property over the objections of the Heath Brothers, who wanted to sell the Property. In May 2011, the Heath Brothers entered the Property and shut off its power while Linda was at work. The next day, Linda mailed a "no trespass notice" to some of the Heath Brothers (the "Letter"), stating that Linda would only allow the Heath Brothers to enter the Property with her permission and presence. The Letter also asserted that Linda had "lifetime rights" to the Property. The next year, the Heath Brothers successfully contested a holographic will purporting to bequeath to Linda a life estate interest in the Property. Despite the judgment that the holographic will did not create a life estate, Linda continued to live at the Property.

In April 2022, Linda filed a complaint with the Letter attached seeking a declaratory judgment that she had adversely possessed the Property. The Estate filed a demurrer contesting the factual allegations set forth in Linda's complaint, alleging additional facts, and asserting that Linda could not prove her adverse possession claim. According to the Estate, Louise's last will and testament bequeathed her estate equally to her seven children. Among other things, the Estate argued that the Letter demonstrated that Linda "occupied the [P]roperty under the mistaken belief that she was a life tenant" and that "[t]he possession of a life tenant . . . is not adverse to the remaindermen."

In her written opposition to the demurrer, Linda argued that her complaint stated a claim for adverse possession and that the Letter did not contradict her claim. Linda further asserted that her "mistaken belief that she was the executor of the estate and/or had lifetime rights to the Property [did] not defeat her claim for adverse possession." Rather, Linda argued that the Letter and her allegations demonstrated "her hostility under a claim of right against the Estate."

Following a hearing, the circuit court issued a letter opinion finding that Linda "failed to plead sufficient facts to show that her possession of the [P]roperty was hostile, exclusive, and for the

statutory period of fifteen years." The circuit court explained that the "unambiguous language" of the Letter "clearly" indicated that Linda believed she had a life estate interest in the Property and contradicted her claim that she adversely possessed the Property since her mother's death. The circuit court found that the Letter merely advised "the remaindermen" of Linda's intent to enforce her perceived right to exclude them from the Property.

The circuit court entered an order sustaining the Estate's demurrer with prejudice. Linda objected to the order, arguing that the term "lifetime rights" as used in the Letter was ambiguous. This appeal followed.

ANALYSIS

"A demurrer tests the legal sufficiency of the facts alleged in a complaint." *Givago Growth, LLC v. iTech AG, LLC*, 300 Va. 260, 264 (2021). "[T]he question is one of law, which the appellate court reviews de novo." *Qiu v. Huang*, 77 Va. App. 304, 324 (2023). "As such, no findings of fact are involved." *Id.* Thus, "[i]n reviewing a demurrer, a [circuit] court must consider the pleadings in the light most favorable to the plaintiff and sustain the demurrer if it is clear that the plaintiff has not stated a valid cause of action." *Ogunde v. Prison Health Servs., Inc.*, 274 Va. 55, 65 (2007). The court assumes the truth of the facts asserted in the complaint, as well as that of all inferences fairly drawn from the facts. *Givago Growth, LLC*, 300 Va. at 264. However, a court "may ignore a party's factual allegations contradicted by the terms of authentic, unambiguous documents that properly are a part of the pleadings." *EMAC, L.L.C. v. Cnty. of Hanover*, 291 Va. 13, 21 (2016) (quoting *Schaecher v. Bouffault*, 290 Va. 83, 107 (2015)). The question presented here is whether Linda's Letter is a document that entitled the circuit court to ignore the claim of adverse possession asserted in her complaint. We hold that it was not and find that the factual allegations included in Linda's complaint were sufficient to state a cause of action.

I. The circuit court erred in determining that Linda's Letter was unambiguous.

The term "life estate" is an established legal concept with inherent boundaries governing its operation and legal force. "In general, a 'life estate' is '[a]n estate held only for the duration of a specified person's life, usu[ally] the possessor's.'" *Larsen v. Stack*, 298 Va. 683, 689 (2020) (alterations in original) (quoting *Life Estate*, *Black's Law Dictionary* (11th ed. 2019)). During this finite period, the holder of a life estate "has the right of possession and to the full enjoyment and use of the land and all the profits arising during h[er] estate therein." *Id.* (quoting 1 T.W. Harrison & James P. Cox, Harrison on Wills and Administration for Virginia and West Virginia § 19.14, at 19-34 (4th ed. 2019)).

In the Letter, Linda asserted that she had "lifetime rights to all property located at the [relevant] address." The Letter claimed that Linda's "lifetime right" to the Property had been recorded at the Circuit Court of Hanover County and warned that "entry [onto the Property] w[ould] be permitted only with explicit permission, and with the physical presence of Linda," without which individuals entering the Property "w[ould] be charged with trespassing and prosecuted to the fullest extent of the law." The Letter concluded by cautioning that it should "serve[] as a warning to each of you, and has been deemed the first and final notice given to ensure the rights of Linda . . . are met and executed." The circuit court found that the language of the Letter "clearly indicate[d] that [Linda] believe[d] she has a life estate in the [P]roperty." But we disagree with the circuit court's conclusion.

Unlike a "life estate," a "lifetime right" is *not* an established legal concept or even a recognized term of art in the realm of Virginia property law. Thus, the phrase "lifetime right" provides no glimmer as to the extent, exact content, or even the rough contours of the right at issue. Although "lifetime right," as Linda used the term in the Letter, indicates that she believed she had exclusive possession of the Property, exclusive possession is not a right unique to a life estate.

- 4 -

Moreover, while a "life *estate*" is an estate of specified duration, *see Larsen*, 298 Va. at 689, it is unclear whether a "lifetime right" is similarly delimited, and was used by Linda to assert a life *tenancy* and, in turn, establish the Heath Brothers as remaindermen. Indeed, the phrase "lifetime right" may be read as to convey an amorphous, but unbounded property interest, akin to a fee simple, "an estate of perpetuity" that "confers an unlimited power of alienation," such that "no person is capable of having a greater estate or interest in land." *Goin v. Absher*, 189 Va. 372, 379 (1949) (quoting *Smith v. Smith's Ex'r*, 122 Va. 341, 352 (1918)).

Further, while the Letter also contained warnings regarding unauthorized entry onto the Property, and sought to "execute" Linda's "rights," these warnings do little to clarify the nature of the subject right, beyond indicating Linda's belief that she possessed the Property and could exclude the Heath Brothers from it. This, by itself, does not show unequivocally that Linda believed that she had a *life estate* interest in the Property, since adverse possession bespeaks an "intention to appropriate and use the land as [one's] own to the exclusion of all others." *Grappo v. Blanks*, 241 Va. 58, 62 (1991).

Accordingly, the Letter is unclear with respect to what underlying right Linda aimed to vindicate by sending it. *See Ambiguity*, *Black's Law Dictionary*, *supra* ("[I]ndistinctness of signification, esp[cially] by reason of doubleness of interpretation."); *see also Ayres v. Harleysville Mut. Cas. Co.*, 172 Va. 383, 393 (1939) ("Words, language, or expressions [are ambiguous] which are capable of more senses than one, difficult to comprehend or distinguish, of doubtful import, of doubtful or uncertain nature, of doubtful purport, open to various interpretations, or wanting clearness of definiteness[.]" (quoting Corpus Juris Secundum, vol. 3, p. 1035)). Thus, while it is true that a "court considering a demurrer" "may ignore a party's factual allegations contradicted by the terms of authentic, unambiguous documents that properly are a part of the pleadings," *EMAC, L.L.C.*, 291 Va. at 21 (quoting *Schaecher*, 290 Va. at 107), Linda's Letter was not such an

unambiguous document, allowing the circuit court to ignore the factual allegations delineated in Linda's complaint.

Accordingly, the circuit court should not have ignored the properly pled factual allegations alleged in Linda's complaint because they were not "contradicted by the terms of authentic, *unambiguous* documents that properly [we]re a part of the pleadings." *Id.* (emphasis added) (quoting *Schaecher*, 290 Va. at 107).

## II. The allegations in Linda's complaint are sufficient to state a cause of action.

Turning to Linda's complaint, we find that it includes factual allegations sufficient to state a cause of action. *See Francis v. Nat'l Accrediting Comm'n of Career Arts & Scis., Inc.*, 293 Va. 167, 171 (2017) ("The [circuit] court is not permitted on demurrer to evaluate and decide the merits of the allegations set forth in a [complaint], but only may determine whether the factual allegations of the [complaint] are sufficient to state a cause of action." (second and third alterations in original) (quoting *Harris v. Kreutzer*, 271 Va. 188, 195 (2006))).

"To establish title to real property by adverse possession, a claimant must prove actual, hostile, exclusive, visible, and continuous possession, under a claim of right, for the statutory period of 15 years." *Grappo*, 241 Va. at 61. According to her complaint, Linda began exclusively possessing the Property over the objections of the Heath Brothers after their mother died in 1988. When approached by her Brothers, she stated, "no, I am not leaving. Do not hold your breath waiting." *See id.* at 62 ("One's possession is *exclusive* when it is not in common with others."). Linda put up "No Trespassing" signs in 1988 and erected "a fence around the Property" in 1989. *See id*. ("Use and occupation of property, evidenced by fencing the property, constitutes proof of *actual* possession."). In the years that followed, Linda continued to live at the Property despite her brothers' demands that she leave. *See id*. ("Possession is *visible* when it is so obvious that the true owner may be presumed to know about it.").

In April 2011, the Heath Brothers attempted to have Dominion Energy change the billing address for the Property. One month later, the Heath Brothers came to the Property while Linda was at work and shut off the power. Linda then sent the Letter demanding that "the Heath Brothers . . . cease and desist from trespassing onto the property." *See id*. ("One is in *hostile* possession if h[er] possession is under a claim of right and adverse to the right of the true owner."); *see also Young Kee Kim v. Douval Corp.*, 259 Va. 752, 757 (2000) ("It is well-established that a claimant's possession is 'hostile' if it is under 'a claim of right and adverse to the right of the true owner.' The phrase 'claim of right,' when used in the context of adverse possession, refers to the intent of a claimant to use land as the claimant's own to the exclusion of all others." (citation omitted) (quoting *Grappo*, 241 Va. at 62)). Through the initiation of this action, Linda continued to reside at the Property, paying taxes and other administrative costs. Thus, the complaint alleged that Linda continuously possessed the Property for the minimum statutory period of 15 years. Indeed, 15 years from Louise's death would have passed in 2003; Linda alleges to have maintained exclusive possession of the home from 1988 through the date of the filing of her complaint. *See Grappo*, 241 Va. at 62. ("Possession is *continuous* only if it exists without interruption for the statutory period."). The factual allegations made in Linda's complaint were sufficient to state a valid cause of action by alleging that her possession of the Property was "actual, hostile, exclusive, visible, and continuous . . . under a claim of right, for the statutory period of 15 years." *Id.* at 61.

It is well-established that, on a demurrer, the circuit court must "assum[e] that all facts alleged [by the plaintiff] and all inferences fairly drawn from those facts are true." *Givago Growth, LLC*, 300 Va. at 264. The extent and nature of the interest Linda intended to adversely possess— whether a life estate or something else—is a proper question for the factfinder, and not for the circuit court on demurrer or for this Court on appeal.

Accordingly, the circuit court erred in sustaining the Estate's demurrer, since Linda's complaint sufficiently alleged that her possession of the Property was actual, hostile, exclusive, visible, and continuous, and under a claim of right, for the statutory period.[2]

CONCLUSION

For the reasons stated, the circuit court's judgment is reversed and this matter is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

---

[2] Because the allegations in Linda's complaint were sufficient to state a cause of action, and her claim, thus, should have survived the Estate's demurrer, it follows that the circuit court's error was not harmless.  *See Moore v. Joe*, 76 Va. App. 509, 516 (2023) ("[H]armless-error review [is] required in *all* cases." (second alteration in original) (quoting *Spruill v. Garcia*, 298 Va. 120, 127 (2019))).